IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PACT XPP SCHWEIZ AG

           Plaintiff,

    v.

INTEL CORPORATION

           Defendant.

Case No. 19-1006-JDW

**JURY TRIAL DEMANDED**

**PLAINTIFF PACT XPP SCHWEIZ AG'S
CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION
TO INTEL'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Policies and Procedures, PACT XPP Schweiz AG ("PACT") provides (1) a response to Intel Corporation's ("Intel") statements of material facts in support of its motion for summary judgment, and (2) PACT's additional statement of material facts.

**RESPONSE TO INTEL'S STATEMENT OF MATERIAL FACTS**

**Response To Intel's Facts Regarding The '047 Patent**

1.    Plaintiff PACT XPP Schweiz AG ("PACT") accuses Intel's Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield processors ("Accused '047 Products") of infringing claims 4, 17, and 13 of the '047 Patent (collectively "the Asserted '047 Claims"). Ex. 6 (Conte Opening Report) ¶ 59.

    **Response:** PACT does not dispute material fact 1.

2.    The Asserted '047 Claims all depend, directly or indirectly, from independent claim 1. Ex. 1 ('047 Patent).

**Response:** PACT does not dispute material fact 2.

3.      Claim 1 of the '047 Patent reads as follows:

A multiprocessor system comprising:
        ***a plurality of data processing units***, each of the data processing units:

>       (a)      being programmable; and

>       (b)      being adaptable for sequentially processing
>       data in a clocked manner; and including

>       (c1) at least one Arithmetic Logic Unit (ALU), and

>       (c2) at least one data register set for storing
>       intermediate results in sequential data processing;

at least one bus system for at least interconnecting at least some of
the data processing units, each being provided a supply voltage by a
voltage supply;

wherein for at least some of the data processing units, the clock
frequency is adjustable at runtime without affecting the clock
frequency of at least one of:

>       one other of the data processing units, and the bus
>       system; and

>       wherein the voltage supply is adapted to supply
>       higher supply voltages for data processing at higher
>       clock frequencies.

Ex. 1 ('047 Patent) at Cl. 1 (emphasis added).

**Response:** PACT does not dispute material fact 3.

4.      On September 30, 2020, the Court issued an Order construing the terms "data

processing unit" and/or "data processing units . . . adapt[able] for sequentially processing data" in

claim 1 to mean "[s]equential data processors that pass results to one or more additional data

processing units to perform additional computations."  D.I. 192 (Claim Construction Order) at 2.

**Response:** PACT does not dispute material fact 4.

5.     In its accompanying Memorandum for Claim Construction, the Court stated that "[d]uring prosecution of [the '047] patent, Pact limited its invention to sequential data processors." D.I. 191 (Memorandum re Claim Construction) at 17.

**Response:** PACT does not dispute material fact 5.

6.     During prosecution of the '047 patent, the Examiner issued an office action dated May 16, 2016 in which the Examiner rejected the then-pending claims based on U.S. Patent No. 5,502,838 ("Kikinis"). Ex. 8 ('047 File History) at -26719-26725.

**Response:** PACT does not dispute material fact 6.

7.     PACT submitted a response to the May 16, 2016 office action on August 10, 2016 that included the following statements:

- "Each of the independent claims *is directed to* a microprocessor system having a plurality of programmable *sequential data processors* and each claim further requires a register set for storing intermediate results for sequential data processing. According to the specification, at [0025], a sequential data processor may pass onto one or more other processors for subsequent processing of data. Paragraph [0019] describes that the multiprocessor system may have a register unit or set which may be assigned the remaining processors such subsequent sequential data processing."

- "It is significant therefore that the *present invention* involves and *is limited to processors of the sequential data process type* that have register sets for storing intermediate results for subsequent data processing by sequential data processors, but not limited to controlling processing to respond to temperature conditions."

- "Applicant respectfully submits that *the claims are limited to sequential data processors* that have register sets for storing data for sequential data processing, and neither are disclosed in Kikinis. Kikinis relates only to data processors of conventional architecture or at least which all have the same processor design. These limitations are significant and define over Kikinis. Applicant therefore respectfully traverses the rejections of all claims over Kikinis."

Ex. 8 ('047 File History) at -26791-26793 (emphases added).

**Response:** PACT does not dispute material fact 7 as written, but notes that the emphases do not appear in the file history and disputes Intel's inferences drawn from the emphases and Intel's interpretation of the file history, including any inference that processors that are capable of executing instructions necessarily are not sequential data processors. PACT incorporates by reference its response to material fact 13.

8.      In that same office action response, PACT stated:

Sequential data processors process a set of data using one or more arithmetic or logic operations on sets of data as opposed to the more common general purpose data processor that typically executes one instruction on a pair of input operands before loading and executing the next instruction. The more general processor is generally known as a sequential instruction processor.

Ex. 8 ('047 File History) at -26791.

**Response:** PACT does not dispute material fact 8.

9.      The Kikinis reference includes the following sentence: "A microprocessor, for example, typically reads an instruction, executes an operation and then reads the next instruction." Ex. 9 (Kikinis) at 3:2-4.

**Response:** PACT does not dispute material fact 9.

10.      Figures 1 and 2 of Kikinis are reproduced below and show an instruction unit:



FIG. 1



FIG. 2

Ex. 9 (Kikinis) at Figs. 1, 2.

**Response:** PACT does not dispute the black and white portions of the above figures are Figs. 1 and 2 of the Kikinis reference. PACT disputes that Figs. 1 and 2 of Kikinis contained the yellow highlighting shown in the figures included in Intel's material fact 10. *See* Intel's Ex. 9 (Kikinis) at Figs. 1, 2.

11.     Opinions of Dr. Thomas Conte, PACT's infringement expert, concerning the "a plurality of data processing units" limitation of the '047 Patent are included in paragraphs 280-283 of his opening report and paragraphs 337-339 of his reply report. Ex. 6 (Conte Opening Report) ¶¶ 280-83; Ex. 7 (Conte Reply Report) ¶¶ 337-39.

**Response:** PACT does not dispute that Dr. Conte included opinions regarding the "a plurality of data processing units" limitation of the '047 patents in paragraphs 280-283 of his opening report and paragraphs 337-339 of his reply report. To the extent Intel's material fact 11 contends these are the only portions of Dr. Conte's reports where Dr. Conte addressed this limitation, PACT disputes material fact 11. Dr. Conte additionally provided opinions regarding the "a plurality of data processing units" limitation of the '047 patent in Exhibit I to Dr. Conte's opening report. *See* Ex. B (Conte Opening Report Ex. I) at 27-48.

Further, because the Court construed "data processing units" and "data processing units . . . adaptable for sequentially processing data" to have the same meaning, Dr. Conte's opinions regarding the "adaptable for sequentially processing data" also demonstrate that the Accused Products practice the "a plurality of data processing units" limitation. Dr. Conte offered opinions regarding the "adaptable for sequentially processing data limitation" in paragraphs 286-292 of his opening report, paragraphs 343-345 of his reply report, and Exhibit I to his opening report. *See* Ex. A (Conte Opening Report) at ¶¶ 286-292; Ex. C (Conte Reply Report) at ¶¶ 343-354; Ex. B (Conte Opening Report Ex. I) at 61-75.

12.     Dr. Conte makes the following statements in his Reply expert report:

- "Here the claim requires a plurality of data processing units, and as noted in my opening report, the cores and graphics cores process data."

- "Dr. Mowry's opinions here rely on the reading in of another limitation 'sequentially processing data', but do not explain why under the plain meaning of 'data processing units,' Intel's processor cores would not qualify."

- "Dr. Mowry does not provide a reason why cores and graphics cores do not meet the plain meaning of 'data processing units' under this limitation."

Ex. 7 (Conte Reply Report) ¶¶ 337-39.

**Response:** PACT does not dispute material fact 12.

13.     The processor cores in the Accused '047 Products are instruction processors that execute sequences of instructions. *See, e.g.*, Ex. 10 (Intel® 64 and IA-32 Architectures Manual) at -78897 ("Microarchitectures that enable ***executing instructions*** with high throughput….") (emphasis added); Ex. 68 (Intel® 64 and IA-32 Architectures Software Developer's Manual, Combined Volumes) at -901027 ("The ███████ ***execution core's ability to execute instructions*** ███████ is a key factor in enabling parallelism.") (emphasis added); Ex. 56 (RS - Ivy Bridge BIOS Writer's Guide) at -89177 ("Enhanced Intel SpeedStep Technology ***voltage transitions are*** ███████ ███████ ***Instruction execution*** ███████ *see also* Ex. 10 (Intel® 64 and IA-32 Architectures Manual) at -78927, Fig. 2-10, -78919, Fig. 27; Ex. 73 (Mowry Rebuttal Report, Vol. 4), ¶ 8; Ex. 71 (4th Generation Intel® Core ™ Processor, codenamed Haswell) at -04030; Ex. 60 (Gesher EXE Global) at -17990-17992; Ex. 62 (Haswell EXE MAS) at -69400-69402; Ex. 63 (SKL Exec GMAS) at -06091-06094; Ex. 58 (CNL EXE Cluster GMAS) at -57114-57115; Ex. 59 (ICL Exec GMAS) at -78632-78633; Ex. 66 (SNB FE/MSID GMAS) at -80503, -80504-80505; Ex. 64  (SKL FIT HAS) at -47146, -47152; Ex. 57 (CNL FIT GMAS) at -45627; Ex. 70 (ICE FIT HAS) at -40483; Ex. 61 (SNB OOO MAS) at

18508-509; Ex. 67 93600DOC0893998 (SKL OOO EXE HAS) at 007-009; Ex. 65 (CNL OOO

EXE HAS); Ex. 69 (ICL OOO EXE HAS) at -36981-36983.

**Response:** PACT does not dispute that the Accused Products are capable of executing

instructions.  To the extent material fact 13 contends the Accused Products are "instruction

processors" and thus necessarily cannot process data, PACT disputes material fact 13.  Nothing

in the materials cited in material fact 13 indicates that Accused Products cannot sequentially

process data, and nothing in the Court's claim construction excluded processors that are capable

of executing instructions from the Court's definition of sequential data processors.  *See* D.I. 191

(Claim Construction Memorandum) at 17 (construing "sequential data processors" as data

processors "that pass results to one or more additional data processing units to perform additional

computations.").  Further, at claim construction Intel itself argued that the Court's construction,

which does not exclude processors that execute instructions, was the proper definition PACT

gave to "sequential data processors" during the prosecution of the '047 patent.  *See* D.I. 90 (Joint

Claim Construction Brief) at 62 (Intel arguing "PACT expressly defined the scope of the

'sequential data processors'" to be "architectures[] where results in one processor are fed to

another, for each to perform a separate computation.").

14.     The processor cores in the Accused '047 Products do not operate on data without

executing instructions.  *See, e.g.*, Ex. 10 (Intel® 64 and IA-32 Architectures Manual) at -78897

("Microarchitectures that enable ***executing instructions*** with high throughput….") (emphasis

added); Ex. 68 (Intel® 64 and IA-32 Architectures Software Developer's Manual, Combined

Volumes) at -01120 ("***The general-purpose instructions preform basic data movement,***

***arithmetic, logic, program flow, and string operations*** that programmers commonly use to write

application and system software to run on Intel 64 and IA-32 processors. ***They operate on data***

***contained in memory***, in the ████████████████████████████████████████████████████,

██████████████████████ (emphasis added); *see also* Ex. 10 (Intel® 64 and IA-32 Architectures Manual) at -78927, Fig. 2-10, -78919, Fig. 2-7; Ex. 73 (Mowry Rebuttal Report, Vol. 4) ¶ 8; Ex. 71 (4th Generation Intel® Core TM Processor, codenamed Haswell) at -04030; Ex. 60 (Gesher EXE Global) at -17990-17992; Ex. 62 (Haswell EXE MAS) at -69400-69402; Ex. 63 (SKL Exec GMAS) at -06091-06094; Ex. 58 (CNL EXE Cluster GMAS) at -57114-57115; Ex. 59 (ICL Exec GMAS) at -78632-78633; Ex. 66 (SNB FE/MSID GMAS) at -80503, -80504-80505; Ex. 64 (SKL FIT HAS) at -47146, -47152; Ex. 57 (CNL FIT GMAS) at -45627; Ex. 70 (ICE FIT HAS) at -40483; Ex. 61 (SNB OOO MAS) at -18508-18509; Ex. 67 (SKL OOO EXE HAS) at 007-009; Ex. 65 (CNL OOO EXE HAS); Ex. 69 (ICL OOO EXE HAS) at -36981-36983.

**Response:** PACT does not dispute that the Accused Products are capable of executing instructions. To the extent material fact 14 contends the Accused Products execute instructions and thus necessarily must not sequentially process data, PACT disputes material fact 14. PACT incorporates by reference its response to material fact 13.

15.    The Accused '047 Products use the Intel 64 and IA-32 instruction set. *See, e.g.*, Ex. 6 (Conte Op. Rpt.), ¶ 284; Ex. 10 (Intel® 64 and IA-32 Architectures Manual).

**Response:** PACT does not dispute material fact 15.

16.    Paragraph 248 of Dr. Conte's opening expert report reads as follows:

*Each of the accused CPUs include multiple cores.* A person of skill in the art would understand that *a multi-core CPU is designed to execute software instruction* at the same time (in parallel) in more than one core, *which instructions include multiple algorithms.* Indeed, *an algorithm is a sequence of instruction written to perform a specified task.* Software programs running on a computer implement algorithms. With a multicore processor like the accused CPUs, the software program can be broken down into independent blocks or "threads" and executed across the multiple cores in order to allow fast, parallel processing of a plurality of algorithms. *See, e.g.*, 93600DOC0386031 at Section 3.1.1 ("The basic strategy is to generate content for the cores which can be run in parallel…"),

93600DOC0131410 ("Multi-threaded Cores – Intel Hyper-Threading Technology (Intel HT Technology) when enabled allows each core to support two threads.").

Ex. 6 (Conte Opening Report) ¶ 248 (emphasis added).

**Response:** PACT does not dispute material fact 16 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts, including any inference that processors that are capable of executing instructions necessarily are not sequential data processors. PACT incorporates by reference its response to material fact 13.

17.    Paragraph 284 of Dr. Conte's opening expert report reads as follows:

The cores of the Accused Products are programmable. They are programmable via the Intel 64 and IA-32 instruction set.

Ex. 6 (Conte Opening Report) ¶ 284.

**Response:** PACT does not dispute material fact 17.

18.    The following is a highlighted excerpt from Paragraph 56 of Dr. Conte's opening expert report:

multiplication on data that is at least 32-bits wide. For example, the Intel 64 and IA-32

Architectures Software Developer's Manual, Volume 1: Basic Architecture explains that the Intel

processors can perform "multiplication" and "division."

7.3.2.5   Multiplication and Division Instructions
The processor provides two multiply instructions, MUL (unsigned multiply) and IMUL (signed multiply), and two divide instructions, DIV (unsigned divide) and IDIV (signed divide).
The MUL instruction multiplies two unsigned integer operands. The result is computed to twice the size of the source operands (for example, if word operands are being multiplied, the result is a doubleword).

Ex. 6 (Conte Opening Report) ¶ 56.

**Response:** PACT does not dispute the excerpt exists in Dr. Conte's opening expert report.    PACT disputes that the excerpt contained the yellow highlighting shown in Intel's material fact 18.

19.     Paragraph 340 of Dr. Conte's reply expert report reads as follows:

Dr. Mowry claims and relies on a distinction between sequential data processors and general purpose processors that execute instructions. Mowry Rebuttal Rep. Vol. 4 at ¶ 12. But this limitation does not require sequential data processors. Dr. Mowry further describes the functionality of FPGAs and how they are programmable, but this does not address why *general purpose processors that execute instructions* cannot be programmable.

Ex. 7 (Conte Reply Report) ¶ 349 (emphasis added).

**Response:** PACT does not dispute material fact 19. PACT notes that the citation in material fact 19 cites to paragraph 349 of Dr. Conte's reply report, whereas the body of material fact 19 correctly states that the quoted excerpt comes from paragraph 340 of Dr. Conte's reply report. *See* Ex. C (Conte Reply Report) at ¶ 340. PACT further notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts, including any inference that processors that are capable of executing instructions necessarily are not sequential data processors. PACT incorporates by reference its response to material fact 13.

20.     Paragraph 341 of Dr. Conte's reply expert report reads as follows:

Dr. Mowry claims that the "Accused Products cannot be programmed in any way to perform sequential data processing." Mowry Rebuttal Rep. Vol. 4 at ¶ 13. As noted above, this limitation does not require sequential data processing. Dr. Mowry does not explain why general purpose processors cannot be programmable via the instruction sets. *When the cores execute instructions in a sequence they execute according to a program, and are thus programmable*.

Ex. 7 (Conte Reply Report) ¶ 341 (emphasis added).

**Response:** PACT does not dispute material fact 20 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts, including any inference that processors that are

capable of executing instructions necessarily are not sequential data processors.  PACT incorporates by reference its response to material fact 13.

21.     Paragraph 342 of Dr. Conte's reply expert report reads as follows:

Dr. Mowry claims that I have failed to show how graphic engines can be programmable.  Mowry Rebuttal Rep. Vol. 4 at ¶ 14.  *But graphics cores execute instructions and are programmable in the same way that general purpose cores are programmable*.

Ex. 7 (Conte Reply Report) ¶ 342 (emphasis added).

**Response:** PACT does not dispute material fact 21 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts, including any inference that processors that are capable of executing instructions necessarily are not sequential data processors.  PACT incorporates by reference its response to material fact 13.

**Response To Intel's Facts Regarding The '301 Patent**

22.     PACT accuses Intel's Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield processors ("Accused '301 Products") of infringing claims 8, 14 (depending on 10), 16 (depending from claim 15, depending from claim 8), and 17 (depending from claim 12) of the '301 Patent (collectively "the Asserted '301 Claims").  Ex. 6 (Conte Opening Report) ¶ 59.

**Response:** PACT does not dispute material fact 22.

23.     Claim 16 includes all limitations of claim 8, and claim 17 includes all limitations of claim 12.  Ex. 2 ('301 patent) at Cl. 16.

**Response:** PACT disputes material fact 23.  Claim 16 of the '301 patent may depend on any of claims 8, 10, 11, 12, or 15.  '301 patent, claim 16.  Claim 17 of the '301 patent may depend on any of claims 8, 10, 11, 12, or 15.  '301 patent, claim 17.  PACT does not dispute that PACT is asserting claim 16 of the '301 patent, depending on claim 15, and claim 15 itself depends on claim 8.  '301 patent, claim 15.  PACT does not dispute that PACT is asserting claim 17 depending on claim 12.

24.     Claim 8 of the '301 Patent reads as follows:

A processor device, comprising
***a plurality of data processing elements adapted for programmably processing sequences*** and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements; and

the processor device is adapted for reducing clock frequencies of the data processing elements in response to a determination that a power reserve of a battery is below a predetermined threshold.

Ex. 2 ('301 patent) at Cl. 8 (emphasis added).

**Response:** PACT does not dispute material fact 24 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

25.     Claim 12 of the '301 Patent reads as follows:

A processor device, comprising:

*a plurality of data processing elements adapted for programmably processing sequences* and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

> each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements;
>
> the clock frequency of each of the data processing elements is at least determinable by a state of the processing device; and
>
> the clock frequency for at least some of the data processing elements is set in accordance with a supply voltage.

Ex. 2 ('301 patent) at Cl. 12 (emphasis added).

**Response:** PACT does not dispute material fact 25 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

26.     Intel filed a petition for inter partes review ("IPR") before the Patent Trial and Appeal Board ("PTAB") on February 7, 2020, contending that the Asserted '301 Claims and other claims of the '301 patent were unpatentable.  Ex. 36 (Intel '301 Petition).

**Response:** PACT does not dispute material fact 26.

27.     In response to Intel's petition, the PTAB instituted IPR2020-00535.  Ex. 37 ('301 Institution Decision).

**Response:** PACT does not dispute material fact 27.

28.     One of the prior art references relied upon by Intel in IPR2020-00535 was U.S.

Patent No. 6,141,762 ("Nicol").  Ex. 36 (Intel '301 Petition) at 3-5.

**Response:** PACT does not dispute material fact 28.

29.     During the IPR hearing on May 21, 2021, PACT's counsel stated the following:

So in **_programmably processing sequences_**, there are two issues I want to talk about. Let's go to Slide 58. Slide 58 shows claim 3 again, and the context of this phase is a method of operating a system, having plurality of data processing elements, adapted for programmably processing sequences. Petitioner says that they can interpret this phase in two ways, as sequences of instructions or sequences of data.

Now, they claim that if you interpret this as sequences of instructions, then any processing element will read on it, but that would essentially read out the term from the phrase because the phrase is a plurality of data processing elements adopted for programmably processing sequences. **_If any processing element processes instructions, which any DRAM processor will do, that doesn't give any meaning to the term_**.

You know, **_we focus on the sequences of data_**, and this is where, you know, we say that data is passed from one PE to another, the results of one PE is passed on another PE.

*  *  *

I wanted to respond to Petitioner Slide 37. **_This is about the sequences of instructions_**. They point to Dr. Mangione-Smith's deposition transcript, and they say this is admissions that meets the claim language. Nothing in this passage points to the claim language.

_Again, this is consistent with our point that if you interpret sequences -- programmably processing sequences to be sequences of instructions,_ then, sure, it's a very broad term. _We're not disputing the general processing elements of Nicol on due process instructions,_ and our expert does not dispute that. **_That's not saying it meets the claim language argument. We're saying, if you interpret that way, it's superfluous as far as the claim language is concerned._**

Ex. 12 (IPR2020-00535, Paper 32) at 76–77 (emphasis added); _id._ at 94 (emphasis added).

**Response:** PACT does not dispute material fact 29 but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

30.     Intel incorporates by reference its undisputed material facts in ¶¶ 10-17.

**Response:** PACT incorporates by reference PACT's responses to material facts 10-17.

**Response To Intel's Facts Regarding The '593 Patent**

31.     PACT accuses Intel's Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield processors ("Accused '593 Products") of infringing certain claims of the '593 Patent. Ex. 6 (Conte Opening Report) ¶ 59.

**Response:** PACT does not dispute material fact 31.

32.     PACT asserts the Accused '593 Products infringe claims 1, 2, 4 (depending on 1), 4 (depending on 2), 5 (depending on 1), 7 (depending on 1), 10 (depending on 1), 11 (depending on 1), 14 (depending on 1), 15 (depending on 1), 16, 17 (depending on 16), 21 (depending on 16), and 22 (depending on 16) of the '593 Patent ("Asserted '593 Claims"). Ex. 6 (Conte Opening Report) ¶ 59.

**Response:** PACT does not dispute material fact 32.

33.     All dependent Asserted '593 Claims ultimately depend from independent claim 1 or 16 of the '593 Patent. Ex. 3 ('593 Patent) at Cl. 2, 4, 5, 7, 10, 11, 14, 15, 17, 21, and 22.

**Response:** PACT does not dispute material fact 33.

34.     Claim 1 of the '593 patent reads as follows:

A data processor on a chip comprising:
a plurality of data processing cores, each of at least some of the processing cores including:

> at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

> at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface; wherein:

> *the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and*

> *each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units,* the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

Ex. 3 ('593 Patent) at Cl. 8.

**Response:**  PACT does not dispute material fact 34.  However, PACT notes that the bold and italics have been added by Intel and are not in the original claim.

35.     Claim 16 of the '593 Patent reads as follows:

A data processor on a chip comprising:
a plurality of data processing cores, each of at least some of the processing cores including:

> at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;

wherein:

> *the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction;* and
>
> *each of at least some of the data processing cores includes a dedicated connection to at least one assigned one of the plurality of memory units* each situated such that no other data processing core and no other memory unit is positioned between the respective data processing core and the respective assigned memory unit, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

Ex. 3 ('593 Patent) at Cl. 16.

**Response:** PACT does not dispute material fact 35. However, PACT notes that the bold and italics have been added by Intel and are not in the original claim.

36.    On February 7, 2020, Intel filed a Petition requesting IPR of several claims of the '593 patent—including independent claims 1 and 16—as unpatentable on multiple grounds, each ground being based on one of two primary references, Balmer and Budzinski. Ex. 13, *Intel Corp. v. PACT XPP Schweiz AG*, IPR2020-00532, Paper 2 (Feb. 7, 2020) at 4.

**Response:** PACT does not dispute that on February 7, 2020 Intel filed a Petition requesting IPR of all of the asserted claims of the '593 patent—including independent claims 1 and 16—as unpatentable over three grounds: (1) Balmer in view of Hennessy, (2) Budzinski in combination with Hennessy, and (3) Budzinski in combination with Gilbertson and Hennessy.

Intel MSJ, Ex. 13 at 4.  Except as expressly admitted, PACT denies the remaining allegations of this paragraph.

37.     Intel's petition related to the '593 Patent was assigned number IPR2020-00532. Ex. 13 (IPR2020-00532, Paper 2).

**Response:**  PACT does not dispute material fact 37.

38.     In its Patent Owner Preliminary Response in IPR2020-00532, PACT sought a construction for the terms "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction" appearing in both claims 1 and 16 of the '593 Patent.  Ex. 14 (IPR2020-00532, Paper 6) at 13-14

**Response:** PACT does not dispute material fact 38.  However, PACT notes that the limitations "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction" are not at issue in Intel's motion for summary judgment and PACT did not seek a construction of any other terms.  *See* Ex. K (PACT Preliminary Response) at 12-16 (Claim Construction section).  Ultimately, the Board declined to adopt any construction for "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction," concluding that it was enough to reject Intel's argument that a prior art "switch" is a structure dedicated for data transfer in a given direction.  Ex. L (Decision Denying Institution) at 9 ("We understand Petitioner to contend that the claimed structure dedicated for directional data transfer encompasses a switch that has the ability to change the direction of data paths."), 16 ("We also determine that, on this record and for purposes of this decision, the disputed claim limitations do not require express construction because, as discussed further below, Petitioner's articulated challenges are premised on its incorrect implied construction.").

To the extent Intel is attempting to argue that PACT's construction in the IPR relating to a dedicated direction of *transfer* should somehow be extrapolated to the limitation regarding a "physically *dedicated connection*" that is at issue in Intel's motion for summary judgment— namely, "each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system"—in order to exclude any system in which the "physically dedicated connection" merges together with the "secondary bus path" at the interface to the assigned memory unit, PACT disputes this material fact.

There is nothing in the IPR to support such an argument. The IPR did not even concern the "physically dedicated connection" limitation that is at issue in Intel's motion for summary judgment. *See* Ex. K (PACT's Preliminary Response) at i (table of contents showing only "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction" were at issue in the IPR). Rather, the IPR concerned only the following issue: whether the claimed "structure dedicated for data transfer" in a given direction "encompasses a switch that has the ability to change the direction of data paths." Ex. L (Decision Denying Institution) at 9; Ex. K (PACT's Preliminary Response) at 1 ("For both Balmer and Budzinski, the Petition alleges that the "first structure" and "second structure" are disclosed by structures that switch data onto a plurality of paths"), 22-25 ("The figures in the Petition also confirm that each *crosspoint switches data in every direction*…. A structure that transfers data in every direction is not "dedicated" for data transfer in a first direction or second direction.").

In fact, in regards to the "physically dedicated connection" limitation at issue in Intel's motion, Intel interpreted the limitation as *allowing* for overlap between the "physically dedicated connection" and the "secondary bus path," including that the two paths may merge at the interface unit. Ex. J (Petition) at 33-35 (pointing to two overlapping paths). For example, Intel argued that the prior art discloses a "physically dedicated connection" to the memory units (in

green) and a secondary bus path (in orange), despite the two path having substantial overlap

throughout (including, but not limited to, the interface to the memory unit):



Ex. J (Intel Petition) at 34-35.  PACT did not challenge Intel's mapping for the "physically

dedicated connection" limitation or argue that the "physically dedicated connection" may not

overlap with the "secondary bus path." *See generally* Ex. K (PACT Patent Owner Response).

And the Board did not address this limitation (which was not at issue in the IPR) in its institution

decision.  *See  generally* Ex. L (Decision Denying Institution).  Thus, Intel's implied

construction in the IPR of the "physically dedicated connection" limitation permits overlap

between the "physically dedicated connection" and the "secondary bus path" and Intel should not

be permitted to take an inconsistent position here.

   39.  In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated as

follows:

> The '593 patent includes two independent claims, which both recite "a first
> structure *dedicated* for data transfer in a first direction" and "a second structure
> *dedicated* for data transfer in a second direction." Consistent with the patent
> disclosure and the ordinary and customary meaning of the claim language, Patent
> Owner contends that these terms should be construed as follows:
>
> -  "a first structure *dedicated* for data transfer in a first direction" should be construed
>   to mean "a first structure *assigned exclusively* for data transfer in a first direction."
>
> -  "a second structure *dedicated* for data transfer in a  second direction" should be
>   construed to mean "a second structure *assigned exclusively* for data transfer in a
>   second direction."

Ex. 14 (IPR2020-00532, Paper 6) at 13-14.

**Response:** PACT incorporates by reference PACT's responses to material fact 38. PACT also notes that the bold and italics have been added by Intel and are not in the original document.

40.    In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated as follows:

> Patent Owner's construction is consistent with the ordinary and customary meaning of the term "dedicated." Dictionary definitions from the time of the '593 patent ***define the term "dedicated" as a thing that is "assigned exclusively" to a particular task or purpose***. Ex. 2013 at 173; see also Ex. 2014 at 181 ("assigned to one particular use only"). Thus, the claim language makes clear that the first structure is ***dedicated (i.e., assigned exclusively)*** for transferring data in a first direction, and the second structure is ***dedicated (i.e., assigned exclusively)*** for transferring data in a second direction. Patent Owner's construction merely expresses the plain meaning of the claim term "dedicated," and should be adopted because it is consistent with the ordinary and customer [sic] meaning of the claims.

Ex. 14 (IPR2020-00532, Paper 6) at 14.

**Response:** PACT incorporates by reference PACT's responses to material fact 38. PACT also notes that the bold and italics have been added by Intel and are not in the original document.

41.    In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated as follows:

> Patent Owner's construction is also consistent with the disclosures of the '593 patent. The '593 patent discloses that its bus system includes a first structure assigned exclusively for data transfer in a first direction and second structure assigned exclusively for data transfer in a second direction. Indeed, the specification states that to "enable the communication of the cells in two directions, separate bus systems are provided for opposite running directions" . . . . Similarly, the '593 patent provides illustrations of the bus system which clearly show a "first structure" and "second structure" that are assigned exclusively for transfer in a respective first and second direction, which are opposite to each other.

Ex. 14 (IPR2020-00532, Paper 6) at 14-15.

> **<u>Response:</u>** PACT incorporates by reference PACT's responses to material fact 38.

42.    In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated as follows:

> [T]he Board should apply the ordinary and customary meaning of the claim language, which requires that the claimed "first structure" be ***"dedicated" (i.e., assigned exclusively)*** "for data transfer in a first direction" and the claimed "second structure" be ***"dedicated" (i.e., assigned exclusively)*** "for data transfer in a second direction." For both Balmer and Budzinski, the Petition alleges that the "first structure" and "second structure" are disclosed by switching structures that *switch* data onto a plurality of paths. ***A structure that switches data onto multiple paths, however, is not "dedicated for data transfer in a [first/second] direction."***

Ex. 14 (IPR2020-00532, Paper 6) at 18-19.

> **<u>Response:</u>** PACT incorporates by reference PACT's responses to material fact 38.

PACT also notes that the bold and italics have been added by Intel and are not in the original document.

43.    In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated that the "crosspoint" in Balmer:

> [I]s a structure that can transfer data in every direction, namely horizontally (to or from a processor) and vertically (to or from a memory). ***A structure that transfers data in every direction is not "dedicated" for data transfer in a first direction or second direction.***

Ex. 14 (IPR2020-00532, Paper 6) at 22-23.

> **<u>Response:</u>** PACT incorporates by reference PACT's responses to material fact 38.

PACT also notes that the bold and italics have been added by Intel and are not in the original document.

44.     In its Patent Owner Preliminary Response in IPR2020-00532, PACT stated that in

Budzinski:

> [A] BCU switches data onto multiple paths (i.e., along the vertical paths and along
> the horizontal paths). . . .   As noted in Section IV.A *supra*, the '593 patent
> distinguishes between paths and directions. *A structure that transfers data onto*
> *multiple paths is not "dedicated" for data transfer in a first direction or second*
> *direction.*

Ex. 14 (IPR2020-00532, Paper 6) at 27-28.

**Response:**  PACT incorporates by reference PACT's responses to material fact 38.

PACT also notes that the bold and italics have been added by Intel and are not in the original

document.


45.     In its Patent Owner Sur-Reply in IPR2020-00532, PACT stated as follows:

> [N]othing in PACT's plain and ordinary meaning construction requires "permanent
> implementations" or "permanence"—only that the structure be *exclusively*
> *allocated* for transfer in a given direction.  Moreover, the "physically *dedicated*
> *connection*" language Intel attempts to rely upon actually supports PACT's
> position *by using the term dedicated in precisely the manner that PACT is*
> *proposing—i.e., reciting physical connections that are exclusively allocated (i.e.,*
> *dedicated)* to connecting the cores and the memory units.

Ex. 38 (IPR2020-00532, Paper 10) at 6.

**Response:**  PACT incorporates by reference PACT's responses to material fact 38.

PACT also notes that the bold and italics have been added by Intel and are not in the original

document.


46.     In its Institution Decision in IPR2020-00532, the PTAB denied institution and

stated that Intel "has not demonstrated a reasonable likelihood of prevailing in showing the

unpatentability of claims 1, 2, 4–11, 14–17, and 19–27 of the '593 patent." Ex. 15 (IPR202000532,

Paper 12) at 25.

**Response:**  PACT does not dispute material fact 46.

47.     In declining to institute IPR in IPR2020-00532, the PTAB found PACT's proposed dictionary definitions were "informative as to the plain and ordinary meaning of 'dedicated'" and that:

> The general dictionary cited in the '593 patent defines the verb "dedicate" as "to set apart to a definite use" and the adjective "dedicated" as "devoted to a cause, ideal or purpose" and "given over to a particular purpose." Ex. 2025 (Webster's Ninth New Collegiate Dictionary). A technical dictionary, The Illustrated Dictionary of Electronics, defines "dedicated" as "[a]ssigned exclusively to a certain purpose [e.g., a dedicated facsimile (fax) line]." Ex. 2013, 6 (brackets in original). Another technical dictionary, the Modern Dictionary of Electronics, defines "dedicated" as "[t]o set apart for some special use" and "[a] piece of equipment that is assigned to one particular use only." Ex. 2014, 6.

Ex. 15 (IPR2020-00532, Paper 12) at 7-16.

**Response:**  PACT does not dispute that in considering the terms "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction" the PTAB found "Patent Owner's dictionaries informative as to the plain and ordinary meaning of 'dedicated'" in the claim limitations, and also cited other dictionaries that were also informative.  Also admitted that the quoted language in this paragraph is from the PTAB's institution decision in IPR2020-00532.  To the extent that Intel is suggesting that PACT argued or the PTAB found that the "physically dedicated connection" cannot overlap with the "secondary bus path" at the interface to a memory unit, PACT disputes material fact 47.  *See* Response to Material Fact 38.

48.     In declining to institute IPR in IPR2020-00532, the PTAB stated that Intel's "construction of these 'dedicated' limitations as broad enough to cover switches is not correct." Ex. 15 (IPR2020-00532, Paper 12) at 20.

**Response:** PACT does not dispute that that the PTAB stated the following regarding the limitations "a first structure dedicated for data transfer in a first direction" and "a second structure dedicated for data transfer in a second direction":

> ***Petitioner's contention is that switches in the crossbar create a flexibly interconnected bus system***. That, however, is more properly addressing the limitation immediately preceding the "wherein" clause that introduces the "dedicated" limitations. See Ex. 1003, 12:31–34 ("a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface."); Pet. 29 (addressing that "flexibly interconnecting" limitation in arguing, "[a]lso referred to as a 'switch matrix,' the crossbar uses 'a plurality of links to be individually operated at crosspoints thereof to effect the different arrangements desired.'"). ***Petitioner's applied construction reads out the requirements of first and second structures each dedicated for data transfer in the respective direction. For the reasons discussed above, Petitioner's construction of these "dedicated" limitations as broad enough to cover switches is not correct***.

Ex. L (Decision Denying Institution) at 19-20 (emphasis added).

49.    In declining to institute IPR in IPR2020-00532, the PTAB stated as follows:

Although [Balmer's] switches may—for an instant and only for the duration of one discrete data transfer operation—create a path from the processor to the memory, Petitioner does not explain adequately how the switches and that path created thereby is a structure dedicated for data transfer in a first direction (processor writing to memory). *Cf.* [Pet.] at 31 (Petitioner's annotations showing a shared portion of two of the purportedly dedicated paths having data transferred in two directions, with writing annotated in green and reading in orange).

Ex. 15 (IPR2020-00532, Paper 12) at 20.

**Response:**   PACT does not dispute that this language is a quote from the PTAB's institution decision.  However, PACT disputes that the PTAB's statement here—that "***[Intel] does not explain adequately*** how the switches and path created thereby" satisfies the claims—is relevant to Intel's motion.  PACT also incorporates by reference PACT's responses to material fact 38.

50.     In declining to institute IPR in IPR2020-00532, the PTAB stated as follows:

[Intel's] Budzinski-based challenge is premised on the BCUs allowing the switching of paths between different components so as to create a flexible bus. . . . Petitioner's challenge reads out the further limitations on the otherwise flexible bus system imposed by the recitation of first and second structures each dedicated for data transfer in a respective direction.

Ex. 15 (IPR2020-00532, Paper 12) at 23-24.

**Response:**  PACT does not dispute that this language is a quote from the PTAB's institution decision.  However, PACT disputes that the PTAB's statement here is relevant to Intel's motion.  PACT also incorporates by reference PACT's responses to material fact 38.

51.     In its letter brief opposing Intel's request that the Court adopt definitions of the claim terms "dedicated for data transfer" and "physically dedicated connection" based on statements PACT made in IPR2020-00532, PACT stated that "***anything PACT or Intel said, or will say, in the IPRs can be used as admissions as to plain and ordinary meaning of claim terms.***" D.I. 211 at 1.

**Response:**  PACT does not dispute that in its letter brief (D.I. 211 at 1), it stated that "anything PACT or Intel said, or will say, in the IPRs can be used as admissions as to plain and ordinary meaning of claim terms."  However, PACT disputes that any statements made by PACT in the IPRs support Intel's motion for summary judgment.

52.     Paragraph 630 of Dr. Reinman's rebuttal expert report reads as follows:

[T]he plain and ordinary meaning of "[first/second] structure dedicated for data transfer in a [first/second] direction" is "[first/second] structure assigned exclusively for data transfer in a [first/second] direction," and Dr. Lin's mapping of the TMS crossbar's switches to the claimed "first structure" and "second structure" fails to satisfy the requirements of limitations 1e/16e because switches that allow for data transfer in different directions are not assigned exclusively for data transfer in one particular direction.

Ex. 16 (Reinman Rebuttal Report) ¶ 630.

**Response:**  PACT does not dispute that material fact 52 correctly quotes Dr. Reinman's rebuttal expert report.  However, PACT notes that the quoted statement discusses whether a switch is "a first structure dedicated for data transfer in a first direction" and a "second structure dedicated for data transfer in a second direction."  There is no discussion of the limitation at issue in Intel's motion for summary judgment, and there is no suggestion that the claimed "physically dedicated connection" cannot overlap with the "secondary bus path."  To the contrary, Intel's validity expert, Dr. Lin, confirmed that he understood PACT's interpretation of the limitation at issue in the summary judgment motion permitted overlap between the "physically dedicated connection" and the "secondary bus path" at the interfaces of the memory unit.  Ex. I (Lin Tr.) at 216:22-217:17, 222:22-224:24.

> 53.    Paragraph 685 of Dr. Reinman's rebuttal expert report reads as follows:
>
> [I]ncluding the Embedded System Bus within the "secondary bus path" would be improper because the claims make clear that the "physically dedicated connection" and "secondary bus path" are separate. In short, Dr. Lin has failed to show that Numa-Q discloses a bus system that includes both the claimed physically dedicated connection and a secondary bus path.

Ex. 16 (Reinman Rebuttal Report) ¶ 685.

**Response:**  PACT does not dispute material fact 53.  However, Dr. Reinman's opinion that the "claims make clear that the 'physically dedicated connection' and 'secondary bus path' are separate" (Ex. H (Reinman) at ¶685) was in the context of his analysis of the NUMA-Q prior art system. There, Dr. Reinman was addressing Intel's expert's (flawed) argument that NUMA-Q's "Embedded System Bus" could also be, *in its entirety*, part of the "secondary bus path" even though Intel's expert had mapped the same Embedded System Bus to the "physically dedicated connection." *Id.* Dr. Reinman was making the point that the "physically dedicated connection" and the "secondary bus path" need to be different structure such that one cannot *wholly* be part of the other, otherwise there would be no "*separat[ion]*" at all between the two. Nowhere in Dr.

Reinman's report does Dr. Reinman opine that the "physically dedicated connection" and the "secondary bus path" need to be *completely* separate from one another such that they cannot merge at the interface of the memory unit."

That Dr. Reinman's opinions allow for a proposed connection to be "dedicated" even if that connection shares a portion of its path with the accused "secondary bus path" can best be seen in his analysis of Dr. Lin's (Intel's invalidity expert) opinions concerning the prior art "Fu." In concluding that Fu failed to disclose limitation 1[f], Dr. Reinman found that the accused "physically dedicated connection" could not share a portion of the very heart of Fu's bus system (the flow control unit (FCU) 212) with the "secondary bus path." Ex. H (Reinman) at ¶715. Dr. Reinman circled the offending overlapping portion through the FCU 212 in red, but notably did not circle the portion of the overlapping paths (orange and yellow lines) that went through the *interfaces* of the memory unit (*e.g.*, memory control unit interface unit (MCU-IFU) 312A). *Id.* Thus, Dr. Reinman did not identify the shared interface to the memory unit as a reason to object to Intel's mapping of the physically dedicated connection and secondary bus path.

In fact, Intel's own validity expert, Dr. Lin, admitted at deposition that he understood PACT's interpretation of the claim language to be that "the physically dedicated connection and the secondary bus path can merge at an interface into the memory" and still satisfy the claim language.  Ex. I (Lin Tr.) at 216:22-217:17, 222:22-224:24.

54.     Opinions of Dr. Conte concerning the "each of at least some of the data processing cores includes a dedicated connection to at least one assigned one of the plurality of memory unit" and "each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory unit" limitations of the '593 Patent are contained in paragraphs 148-151 of his opening report and paragraphs 169-193 of his reply report.  Ex. 6 (Conte Opening Report) ¶¶ 148-51; Ex. 7 (Conte Reply Report), ¶¶169-93.

**Response:** PACT does not dispute that paragraphs 148-151 of Dr. Conte's opening report and paragraphs 169-193 of his reply report discuss the limitation of "each of at least some of the data processing cores includes a dedicated connection to at least one assigned one of the plurality of memory unit" and "each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory unit" limitations of the '593 Patent. To the extent Intel is suggesting these are the only paragraphs relevant to this limitation, PACT disputes this material fact. Dr. Conte provided further evidence and discussion in the claim charts he attached to his report for the '593 patent (*e.g.*, Opening Rpt., Exhibit G) and in his overview of the accused products (*e.g.*, paragraphs 61-104). Ex. A (Opening Conte Rpt.).

55.     Paragraph 131 of Dr. Conte's opening expert report reads as follows:

The vast majority of the Accused Bus Instrumentalities employ a "ring" bus system, while the Skylake server architecture employs a "mesh" bus system.

Ex. 6 (Conte Opening Report) ¶ 131.

**Response:** PACT does not dispute material fact 55.

56.     Paragraphs 115-116 of Dr. Conte's opening expert report reads as follows:

"a plurality of data processing cores, each of at least some of the processing cores including: at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and at least 3 registers for storing at least 32-bit wide data"

In my opinion, each of the Accused Bus Instrumentalities satisfies this limitation.

For example, the Sandy Bridge CPUs include at least two data processing "cores" and up to eight data processor cores in the Jaketown server architectures. . . . Additional evidence showing that each of the accused CPUs include two or more cores is found in the claim charts I have attached to my report.

Ex. 6 (Conte Opening Report) ¶¶ 115-16.

**Response:**  PACT disputes material fact 56.  The quoted text include only a portion of paragraphs 115-116.  Ex. A (Conte Opening Report) ¶¶ 115-16.

57.    Paragraphs 148-151 of Dr. Conte's opening expert report reads as follow:

<u>"each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.</u>

In my opinion, each of the Accused Bus Instrumentalities meet this limitation.

The data processing cores also include a physically dedicated connection from the core to the ███████████ ("at least one physically assigned one of the plurality of memory units"). Those ██████████ are also accessible by other data processing over the ring or mesh bus. The path from the other data processing core to the ██████ is "a secondary bus path of the bus system."

For example, each core has a physical assigned ████████████████ ). *See, e.g.,* 93600DOC0003528 (CBO Global) at 93600DOC0003536; see also 93600DOC0012798 ("The non-memory requests are handled by the ██████ ████████████████ ). "Where the core communicates with the ████████████████████████████████" using a physically dedicated connection. *Id.* Other cores can also access a core's ████████████████████████. *Id.* ("For a typical communication between a core and the █████, where the core and the relevant █████████ are on ████████████████████████████████████████████████████████.").

The illustrations below show that a core has a dedicated physical connection to its ████████████ using the straight arrow from the core to the █████. In the image on the left, this is represented by the straight line going from the Core to the ████████████ On the image on the right, this is represented by the dedicated path from the ██████████████████████████ Each core can also access another core's ██████████ █████████ over the ring.  The ring thus serves as a secondary path to the ██████████████



Ex. 6 (Conte Opening Report) ¶¶ 148-51.

**Response:**  PACT does not dispute material fact 57.

58.     Paragraph 177 of Dr. Conte's opening expert report reads as follows:

In my opinion, each of the Accused Bus Instrumentalities discloses "each of at least some of the data processing cores includes a dedicated connection to at least one assigned one of the plurality of memory units … the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system." See Claim 1, corresponding limitation.

Ex. 6 (Conte Opening Report) ¶ 177.

**Response:**  PACT does not dispute material fact 58.

59.     A "C-Bo" in the Accused '593 Products is ███████████████████████████ that "███████████████████████████████████████████        ██████████" Ex. 17 (93600DOC0025656) at -25667-25668; Ex. 18 (93600DOC0003528) at -03535 ("The C-Bo provides connection between one Core, ████████████████████████████████████ ████████████).

**Response:**  PACT disputes material fact 59.  This material fact is ambiguous because it is unclear what it means for a ███████ to be "████████████████████████████████ how this fact is material or relevant to Intel's motion for summary judgment.  Moreover, the ███████████

██████████████████████████████████████████████████████ ██████████████████████ Ex. C (Reply Conte Rpt., ¶172) (citing Intel documents confirming the same).  Intel's expert, Dr. Mowry, also agreed that the ██████is an interface to the ring.  Ex. AL (Mowry Rpt. Vol. 2) at ¶ 78 ████████████████████████████████████████ ███████████████████████████████████████.").  "As an interface, a POSITA would understand that the ██████████████████████████████████████████████ ██████████████████████████████████.″ *Id*. ███████████████████████████████ ████████████████████████████ itself are irrelevant to the claimed "secondary bus path" that is traversed over the ring to access the ██████████ .  *Id*.

60.     In all Accused '593 Products, data routed to each ████████whether from the connection between a core and its ███████████████████ or from another core to that ███████ over the ring (or mesh)—must go through the corresponding ████████████████████████████ .  Ex. 17 (93600DOC0025656) at ‑25669 ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████");  Ex. 39 (93600DOC022114) at ‑22128‑22130 ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████.");  Ex. 18 (93600DOC0003528) (█████ Global) at ‑03536, ‑03539‑03540; Ex. 40 (93600DOC0569450) at ‑69463, ‑69565; Ex. 6 (Conte Opening Report) ¶ 70 ████████████████████████████████████████ ████████████████████████."), ¶ 136 ██████████████████████████████████████████ ███████████████████"), ¶ 141 ████████████████████████████████████████ ██████████████████████████████████████████

**Response:**  The material fact is ambiguous with respect to its assertion that data routed to each █████████████████████████████████████████████████████

However, to the extent the phrase "█████████████████████████████████████

███" refers to the fact that the█████████████████████████████, PACT does not

dispute material fact 60. Both PACT and Intel's expert agree that the ████ is merely an

"interface between the ring bus (or mesh bus) and the████████ Ex. C (Reply Conte Rpt.,

¶172) (citing Intel documents confirming the same); Ex. AL (Mowry Rpt. Vol. 2) at ¶ 78 ████

████████████████████████████████████████████████████

████████ "As an interface, a POSITA would understand that the ███ serves as the ████

████████████████████████████████████████ *Id.*

     61.    The connections between each core and ████████████████████████████

████████████████████████████████████████████████

████████ Ex. 42 ██████ _Ring MAS) at Fig. 2. The below figure indicates (in yellow) the path

that data takes from a core to its ██████████████████████████" and from an above core

over the ring structure to that same ████████



Ex. 42 ███ _Ring MAS) at Fig. 2; *see also* Ex. 40 (Skylake Server / Knights Landing Mesh

HAS) at Fig. 5-1 (likewise demonstrating that the wire arrangement/data path of ███████

does not include dedicated wire to the ██████████ The accused products use a single path

for data sent to each ██████████ (i.e., the accused "physically assigned one of the

plurality of memory units") that is ██████████ between the ██████████

core and the ring connecting other, ██████████, and controlled by a shared ████████

██████████. *See also* Ex. 41 (Mowry Rebuttal Report, Vol. 2) ¶¶ 101-02 (citing Ex.

42 ███ _Ring MAS) at Fig. 2)).

**Response:**  PACT disputes material fact 61. ██████████████

████████████████████████████. Indeed,

both experts agree that the ████ is merely an "interface between the ring bus (or mesh bus) and

the ██████ Ex. C (Reply Conte Rpt., ¶172) (citing Intel documents confirming the same);

Ex. AL (Mowry Rpt. Vol. 2) at ¶ 78 ██████████████

██████████████ "As an interface, a POSITA would

understand that the ██████████████████

██████████████ *Id*.  The actual path that a core uses to ██████████

██████████ (the secondary bus path) is the ring bus, which does not overlap with

the connection that the core uses to access its ██████████ (the physically dedicated

connection). Ex. C (Reply Conte Rpt., ¶¶172-174).  Put another way, the connections between

each core and ██████████ ██████████████

████████████████████████████████████

██████████████████████████

██████████████

62.     The cores in the accused mesh architecture (*i.e.* in Skylake server products) do not have a physically dedicated connection to a physically assigned memory unit.  As seen below, the ███████ in the accused mesh architectures ███████████████████████████████ ████████████████████████████████████████ and routes messages to the core, cache, or horizontal ring ██████████████.



Ex. 40 (Skylake Server / Knights Landing Mesh HAS (Hallnor Ex. 8)) at -69565 (Fig. 5-1); *see also* Ex. 41 (Mowry Rebuttal Report, Vol. 2) ¶ 103.

**Response:**  PACT disputes material fact 62.  The cores in the accused mesh architecture do have a physically dedicated connect to a physically assigned memory unit.  <u>First</u>, as discussed in PACT's opposition, contrary to Intel's suggestion, a "physically dedicated connection" does not stop being a physically dedicated connection merely because it merges with the secondary bus path at the interface to the memory unit.  <u>Second</u>, the ███████ stop circuitry shown in Intel's illustration above "serves as an █████████████████████████████ ████████████████████████████████████████████ and does not 'share' the same path as the physically

dedicated connection between the collocated CPU core and ███████ Ex. C (Reply Conte

Rpt., ¶174).

63.    Paragraphs 644-645 of Dr. Reinman's rebuttal expert report reads as follows:

[T]he actual physical connection the TMS's parallel processor uses to access a memory device through its local port is not a physically dedicated connection because the same crossbar connections of the alleged bus system (i.e. crossbar) can be used by other parallel processors to access the same memory device.

As one example shown in the marked up figure below, the connection PP3 uses to write data to Data Ram 2 (pink path) is not physically dedicated for PP3's own use and instead PP3 shares the same crossbar connections (circled in red) with other processors, including PP0, which may write data to Data Ram 2 (yellow path). As such, PP3 does not have a physically dedicated connection to the memory unit Data Ram 2.



Figure 2–1. TMS320C80 Block Diagram

Ex. 16 (Reinman Rebuttal Report) ¶¶ 644-45.

**Response:**  PACT does not dispute that material fact 63 correctly quotes Dr. Reinman's

rebuttal expert report.  However, Dr. Reinman was addressing Intel's expert's (flawed) argument

that a single "cross-bar" structure could be both the "physically dedicated connection" and the

"secondary bus path."  Ex. H (Reinman Rebuttal Report) ¶¶ 644-45.  Put another way, Dr.

Reinman was making the point that Dr. Lin had pointed to a single cross-bar structure as both the "physically dedicated connection" and the "secondary bus path."  Nowhere in Dr. Reinman's report does Dr. Reinman opine that the "physically dedicated connection" and the "secondary bus path" need to be *completely* separate from one another such that they cannot merge at the interface of the memory unit."  In fact, Intel's own validity expert, Dr. Lin, admitted at deposition that he understood PACT's interpretation of the claim language to be that "the physically dedicated connection and the secondary bus path can merge at an interface into the memory" and still satisfy the claim language.  Ex. I (Lin Tr.) at 216:22-217:17, 222:22-224:24.

**Response To Intel's Facts Regarding The '631 Patent**

64.     PACT accuses Intel's Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield processors ("Accused '631 Products") of infringing claim 4 of the '631 patent.  Ex. 6 (Conte Opening Report) ¶59.

**Response:**  PACT does not dispute material fact 64.

65.     Claim 4 of the '631 Patent depends from dependent claim 3, which depends from dependent claim 2, which depends from independent claim 1.  Ex. 4 ('631 Patent) at Cl. 4.

**Response:**  PACT does not dispute material fact 65.

66.     Claim 4 includes all limitations of claims 1, 2, and 3.  Ex. 4 ('631 Patent) at Cl. 4.

**Response:**  PACT does not dispute material fact 66.

67.     Claim 1 of the '631 Patent read as follows:

A bus system for transferring data between parts of a multiprocessor system, the bus system comprising:

> *a plurality of bus segments for each processor of the multiprocessor system comprising a plurality of flexible data channels to each processor* of the multiprocessor system according to algorithms to be executed, wherein a plurality of algorithms may executed in parallel;
>
> wherein a communication between a sender and a receiver is established in accordance with a data transfer for an executed algorithm; and at least one identifier is transmitted with the data for at least one of: identifying a source of the data transfer; and selecting a target of the data transfer.

Ex. 4 ('631 Patent) at Cl. 1 (emphasis added).

**Response:** PACT does not dispute material fact 67 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

68.    On February 7, 2020, Intel filed an IPR Petition with the PTAB requesting IPR of several claims of the '631 patent, including claim 4. Ex. 19 ('631 IPR Petition) at 3-4.

**Response:** PACT does not dispute material fact 68.

69.    The PTAB instituted IPR No. IPR2020-00531 based on Intel's petition. Ex. 43 ('631 Institution Decision).

**Response:** PACT does not dispute material fact 69.

70.    In its IPR petition, Intel argued that claim 4 of the '631 Patent was not patentable based on a prior art reference named Budzincki, in combination with other prior art references. Ex. 19 ('631 IPR Petition) at 4.

**Response:** PACT does not dispute material fact 70.

71.     Intel made the following statements in its Petition in IPR2020-00531:

Figure 20 [of Budzincki] (annotated) illustrates the structure of the BCU and demonstrates that there are at least four bus segments (green) for each processor, each segment controlled by switches (yellow):



Ex. 1007, Fig. 20; *see also id.*, Fig. 21 (showing switches configured differently to provide alternative data path), Fig, 19, reproduced supra Section X.C.1.a, 34:2820, 33:15-35:20. A POSA would have understood that both the short buses and data bus segments are "bus segments" because they are buses defined on either end by one or more nodes (e.g., switches, memory modules, or memory mapper), much as the "bus segments" identified by Applicant during prosecution were buses defined on either end by switches. Ex. 1001, ¶¶157-158; Supra Section VII.B.

Ex. 19 ('631 IPR Petition) at 51-52.

**Response:** PACT does not dispute material fact 71.

72.     PACT made the following statements in its Patent Owner Response in IPR2020-00531:

Budzinski's data bus does not provide a "plurality" of bus segments for each processor as required by the claims. Only one of the four bus segments identified by Petitioner is connected to a processor-- the remaining bus segments are only accessible by the processor depending on the configuration of the bus control unit (BCU). See Ex. 2023, ¶78.

Ex. 24 ('631 Patent Owner's Response) at 26.

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim **any** indirect connection of bus segments to a processor, so long as the bus segments are directly **accessible** to the processor, as described by PACT in its IPR papers and at the oral hearing.  *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23.

73.   PACT made the following statements in its Patent Owner Response in IPR2020-00531:

> The claim language on its face requires a plurality of bus segments connected **to each processor.** The Petition does not identify such a plurality in Budzinski's data bus; rather, the four "bus segments" identified by Petitioner are simply four bus segments that the processor may **indirectly access**. Ex. 2023, ¶ 76.

*Id.* at 25 (emphasis added).

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim **any** indirect connection of bus segments to a processor, so long as the bus segments are directly **accessible** to the processor, as described by PACT in its IPR papers and at the oral hearing.  *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23.  In addition, PACT notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

74.   PACT made the following statements in its Patent Owner Response in IPR2020-00531:

> In addition , the combination of Budzinski's data bus and status bus do not comprise a plurality of bus segments for each processor that further comprise "a plurality of flexible data channels to each processor." The data bus and status bus collectively provide one data channel to each processor, which may be used to facilitate a single data transaction at a time . Ex. 2023 , ¶80. The data bus and status bus do not provide

alternative, parallel paths between a processor and memory, unlike the multiprocessor system described in the '631 Patent. *Compare, e.g.,* Ex. 1007 16:2031 (describing the use of the status bus to provide synchronization and control signals), *with* Ex. 1003, 27:8-12 ("more than two bus connections ... allow access of a plurality of senders/receivers ... ").

*Id*. at 27.

**Response:** Disputed as to materiality. As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim *any* indirect connection of bus segments to a processor, so long as the bus segments are directly *accessible* to the processor, as described by PACT in its IPR papers and at the oral hearing. *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23.

75.   PACT made the following statements in its Patent Owner Response in IPR2020-00531:

> Even if data bus segment and status bus segment are considered together, the claim limitation is not satisfied. The claim requires the plurality of bus segments for each processor to "compris[e] a plurality of flexible data channels to each processor." But the data bus and status bus connections to each processor collectively only provide a single data channel to each processor. Put another way, the status bus does not provide a data channel that is separate or alternative to the data bus. ***The status bus is not a data channel at all***-indeed, there is a reason why it is distinct from Budzinski's "data bus." Rather, the status bus is only used to provide certain mode synchronization and control signals when two or more *Id*. at 31 (emphasis added).

**Response:** Disputed as to materiality. As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim *any* indirect connection of bus segments to a processor, so long as the bus segments are directly *accessible* to the processor, as described by PACT in its IPR papers and at the oral hearing. *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23. In addition, PACT notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

76.     The PTAB stated the following in its Final Written Decision in IPR2020-0053: "PACT argues that the claim's ordinary and customary meaning "requires a plurality of bus segments connected directly to each processor, and not simply accessible by the processor." Ex. 21 ('631 Final Written Decision) at 16; *see also id*. at 18.

**Response:** Disputed as incomplete.  The PTAB's Final Written Decision made clear that the PTAB interpreted the claim term to require bus segments that are "direrctly accessible" to the processor and not just "remotely accessible through a switched path involving other segments." Ex. O ('631 IPR Final Written Decision) at 17.

77.     The PTAB stated the following in its Final Written Decision in IPR2020-00531:

Based on the intrinsic evidence, we find PACT's argument persuasive that the term "a plurality of bus segments for each processor" does not include bus segments that are only indirectly accessible to a processor through, for example, a switch or another bus segment.  We agree that if a bus segment can be "for" a processor imply by being a remote part of a larger bus system that is ultimately accessible by the processor this would effectively make the phrase 'for each processor' redundant to the phrase "comprising a plurality of flexible data channels to each processor." *See* Ex. 1003, 34:22- 24**.**

Ex. 21 ('631 Final Written Decision) at 16.

**Response:** Disputed as incomplete.  The PTAB's Final Written Decision made clear that the PTAB interpreted the claim term to require bus segments that are "direrctly accessible" to the processor and not just "remotely accessible through a switched path involving other segments." Ex. O ('631 IPR Final Written Decision) at 17.

78.     In denying Intel's motion for reconsideration, the Court stated:

Moreover, subject to Fed. R. Civ. P. 11, PACT's counsel represented that PACT does not intend to argue that any accused product satisfies the claim limitation "a plurality of bus segments for each processor" based on an interpretation of the term that is inconsistent with the arguments presented during the '631 Patent's IPR.

D.I. 252, ¶ 3.

**Response:** PACT does not dispute material fact 78.

79.     Opinions of Dr. Conte concerning the "a plurality of bus segments for each processor of the multiprocessor system comprising a plurality of flexible data channels to each processor" limitation of the '631 Patent are contained in paragraphs 241-250 of his opening report and paragraphs 207-258 of his reply report.  Ex. 6 (Conte Opening Report) ¶¶ 241-50; Ex. 7 (Conte Reply Report) ¶¶ 207-58.

**Response:**  PACT does not dispute material fact 79, but notes that additional opinions relating to this limitation may be addressed in other paragraphs of Dr. Conte's report.

80.     Paragraph 207 of Dr. Conte's reply expert report reads as follows:

> As relevant to this limitation, I understand that the Court has construed "a plurality of bus segments for each processor" to have its plain and ordinary meaning. In his report, Dr. Mowry notes that the PTAB construed "a plurality of bus segments *for* each processor" to mean that "'each [of the plurality of] bus segment *is directly accessible* to its corresponding processor or processors,'" and asserts that PACT has confirmed that this narrower construction is the plain and ordinary meaning of this term. *See* Mowry Rebuttal Report Vol. 3 ¶ 11 (emphasis added). I understand that Dr. Mowry has applied the PTAB's narrower construction of "a plurality of bus segments for each processor" in his report to conclude that the Accused Bus Instrumentalities do not meet this limitation. *See id.* ¶¶ 25-27, 33-35, 40-41. *I disagree with Dr. Mowry's assertion (i) that "a plurality of bus segments for each processor" should be construed according to the PTAB's narrower construction or (ii) that PACT has confirmed that the PTAB's narrower construction of this term is its plain and ordinary meaning*.

Ex. 7 (Conte Reply Report) ¶ 207 (emphasis added).

**Response:** PACT does not dispute material fact 80 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

81.     Paragraph 214 of Dr. Conte's reply expert report reads as follows:

I understand that after the PTAB issued a Final Written Decision in the '631 patent IPR finding that claim 4 was not unpatentable, Intel filed a motion for reconsideration asking the Court to construe "a plurality of bus segments for each processor" to require "a plurality of bus segments directly accessible to each processor." D.I. 241. I also understand that the Court denied Intel's motion for reconsideration, and thus this limitation is still construed to have its plain and ordinary meaning. Give the arguments made by PACT during the '631 patent IPR in view of the '631 patent specification and claim language, ***I believe that a POSITA would recognize that "a plurality of bus segments for each processor" requires a plurality of bus segments whose access always involves transmitting information to or from each processor without being required to be directly connected to the processor***.

Ex. 7 (Conte Reply Report) ¶ 214 (emphasis added).

**Response:** PACT does not dispute material fact 81 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

82.     Paragraphs 242-244 244 of Dr. Conte's opening expert report are reproduced below including the images that appear in that paragraph:

242.     In my opinion, the Accused Bus Instrumentalities meet this limitation under the Court's construction. The Accused Bus Instrumentalities implement a ring or mesh bus, each of which is a segmented bus system with a plurality of bus segments for each processor core of multi-core system that comprises a plurality of flexible data channels to each core according to algorithms to be executed, wherein a plurality of algorithms may executed in parallel

243.     The ring bus—both half and full ring—is a segmented bus with a plurality of bus segments for each core of the CPU. For example, the bus system in the accused ring architectures include a ███████████████ as can be seen below:



93600DOC0025750 (left), 93600DOC0299489 (right).

244.   The ███████████████████████████ ███████████████████████████████████████████ includes a plurality of bus segments that are connected to the core, for example ██████████ ████████████ that connect the core to the ring.



93600DOCO137038. ██████████████████████████ ██████████████████████████████████.



93600DOC0494993 (left image); 93600DOC0025668 (right). Thus, there are a plurality of bus segments for each core in the CPU.

Ex. 6 (Conte Opening Report) ¶¶ 242-44.

**Response:** PACT does not dispute material fact 82.

83.     Paragraph 246 of Dr. Conte's opening expert report is reproduced below including the images that appear in that paragraph:

The Skylake Server architectures use a mesh bus. As I explained in connection with the '593 patent, the mesh architecture comprises a horizontal and vertical ring topology:



93600DOC0537809 (Skylake Server ▮▮▮ HAS) at 93600DOC0537814; 93600DOC0551019 ("The mesh builds on the module ring concept from prior products (starting with JKT). Each mesh interface agent supports both vertical and horizontal rings."). As can be seen in the image above, each core has segments that connect it to the horizontal and vertical rings, and thus a plurality of bus segments.

Ex. 6 (Conte Opening Report) ¶ 246.

**Response:** PACT does not dispute material fact 83.

84.     Paragraph 143 of Dr. Conte's opening report is reproduced below including the image that appears in that paragraph:

Like the ring bus architecture, Intel's mesh bus architecture include a ▮▮▮ that connects the data processor cores to the ▮▮▮▮▮▮. The illustration below shows a block diagram of the ▮▮▮ As can be seen, there is a ▮▮▮▮▮ that connects the core to the mesh, and a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



93600DOC0613063 (Skylake Server Design for Burn-in) at 93600DOC0613080.
Ex. 7 (Conte Reply Report) ¶ 143.

**Response:** PACT does not dispute material fact 84.

85.    In all of the Accused '631 Products, there is an intervening ██████████ ██████ between the processor cores and the ring/mesh.  Ex. 27, (93600DOC0140649) at -653.  Ex. 49 (93600DOC0613063) at -080; Ex. 79 (93600DOCO137001) at 93600DOCO137038; Ex. 17 (93600DOC0025656) at -25667-25668; Ex. 49 (93600DOC0613063) at -13080; Ex. 6 (Conte Opening Report) ¶¶ 89, 242-244; Ex. 7 (Conte Reply Report) ¶ 236.  Ex. 25 (Mowry Rebuttal Report, Vol. 3), ¶¶ 25–27, 33–34.

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim *any* indirect connection of bus segments to a processor, so long as the bus segments are directly *accessible* to the processor, as described by PACT in its IPR papers and at the oral hearing.  *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23.

86.     In all of the Accused '631 Products, the processor cores are ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 27, (93600DOC0140649) at -653.   Ex. 49 (93600DOC0613063) at -080; Ex. 6 (Conte Opening Report), ¶¶ 89, 242-244. Ex. 7, (Conte Reply Report), ¶ 236.  Ex. 25 (Mowry Rebuttal Report, Vol. 3), ¶¶ 25–27, 33–34.

**Response:** PACT does not dispute material fact 86.

87.     In all of the Accused '631 Products, the processor cores are not directly connected to connections within the ▮▮▮▮ Ex. 27, (93600DOC0140649) at -653; Ex. 49 (93600DOC0613063) at -080; Ex. 6 (Conte Opening Report), ¶¶ 89, 242-44; Ex. 7, (Conte Reply Report), ¶¶ 236–39.  Ex. 25 (Mowry Rebuttal Report, Vol. 3), ¶¶ 25–27, 33–34.

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00531 did not disclaim *any* indirect connection of bus segments to a processor, so long as the bus segments are directly *accessible* to the processor, as described by PACT in its IPR papers and at the oral hearing.  *See* Ex. L ('631 Patent Owner's Response) at 30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23.

88.     In all of the Accused '631 Products, the processor cores do not have direct access to connections within the ▮▮▮▮ Ex. 27, (93600DOC0140649) at -653; Ex. 49 (93600DOC0613063) at -080; Ex. 6 (Conte Opening Report) ¶¶ 89, 242-244; Ex. 7, (Conte Reply Report) ¶¶ 236–239.  Ex. 25 (Mowry Rebuttal Report, Vol. 3), ¶¶ 25–27, 33–34.

**Response:** Disputed.  As the terms "directly accessible" and "indirectly accessible" were used in the context of the '631 IPR, the processor cores in the Accused '631 Products do have direct access to the connections within the ▮▮▮▮ *See* Ex. L ('631 Patent Owner's Response) at

30; Ex. N ('631 IPR Oral Hearing Transcript) at 22:13-24:23; Ex. Q (Mowry Dep. Tr.) at 203:14-205:22.

89.     All of the Accused '631 Products use a ring architecture, except for Skylake server which uses a mesh architecture.  Ex. 6 (Conte Opening Report) ¶ 131.

**Response:** PACT does not dispute material fact 89.

90.     Only the ███████████████████████ can transmit information to the core from the ████  Ex. 50 (93600DOC0638744) at -752; Ex. 6 (Conte Opening Report) ¶¶ 76, 253; Ex. 25 (Mowry Rebuttal Report, Vol. 3) ¶¶ 45–46.

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT did not argue (and neither the PTAB nor the Court) have construed "a plurality of flexible data channels to each processor" as limiting the claims to data channels that only transfer data *to* a core.

91.     The ████████████████████████████████████████████ ████████  Ex. 50 (93600DOC0638744) at -638752; *see also* Ex. 74 (93600DOC0564615) at 564640; Ex. 24 (93600DOC0631893) at -631911; Ex. 75 (93600DOC0774916) at -774927; Ex. 25 (Mowry Rebuttal Report, Vol. 3) ¶¶ 45-46.

**Response:** Disputed as to materiality.  As discussed in PACT's opposition brief, PACT did not argue (and neither the PTAB nor the Court) have construed "a plurality of flexible data channels to each processor" as limiting the claims to data channels that only transfer data *to* a core.

92.     Only the ███████████████████ connection can carry data. Ex. 50, 93600DOC0638744 at -638758-62; *see also* Ex. 74 (93600DOC0564615) at -564640; Ex. 24, (93600DOC0631893) at -631911; Ex. 75 (93600DOC0774916) at -774927; Ex. 25 (Mowry Rebuttal Report, Vol. 3) ¶¶ 45-46.

**Response:** Disputed. █████████████████████████ ████████████████████████████████████████████████████████████████ ████████.” Ex. C (Conte Reply Rpt) at ¶ 246; Ex. R at 93600DOC0839113

93.     The █████████████████████████████ carry █████████████, not data.   Ex. 50, 93600DOC0638744 at -638758-62; *see also* Ex. 74 (93600DOC0564615) at 564640; Ex. 24 (93600DOC0631893) at -631911; Ex. 75 (93600DOC0774916) at -774927; Ex. 25 (Mowry Rebuttal Report, Vol. 3) ¶¶ 45-46.

**Response:** PACT does not dispute material fact 93.

94.     Paragraph 246 of Dr. Conte's reply report is reproduced below including the image that appears in that paragraph:

Dr. Mowry's opinion that there is only a ███████████████████ to the core is wrong "Many signals exist to the side of the ████████████ and "[t]he signals not covered by the ████████████████████████████ Skylake IDI HAS at 93600DOC0839108. These signals are transmitted via ████████████████, and POSITA would recognize that each interface is equivalent to a ████████ For example, the ██████████████████ ████████████████████████████████████:





Ex. 7 (Conte Reply Report) ¶ 246.

**Response:** PACT does not dispute material fact 89.

95.    Paragraph 247 of Dr. Conte's reply report reads as follows:

Since it transmits data from the uncore to the core, a POSITA would recognize the ███████████ ████████ ██ ██ ████████. As such, the Accused Bus Instrumentalities provide a plurality (i.e., two) of data channels to each processor.

Ex. 7 (Conte Reply Report) ¶ 247.

**Response:** PACT does not dispute material fact 89.

96.    The "████████████████████████████████████████ ██████████████████████ identified by Dr. Conte are control signals, not data signals.  Ex. 76 (Hallnor Decl.) ¶¶ 7-13.

**Response:** Disputed.  The CRDataInMnnnH signal is described in Intel documents as ████████████████████████████████."  Ex. C (Conte Reply Rpt) at ¶ 246; Ex. R at 93600DOC0839113.

**Response To Intel's Facts Regarding The '908 Patent**

97.     PACT accuses Intel's Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield processors ("Accused '908 Products") of infringing claim 5 of the '908 patent. Ex. 6 (Conte Opening Report) ¶ 59.

**Response:** PACT does not dispute material fact 97.

98.     Claim 5 of the '908 patent depends from independent claim 4.  Ex. 5 ('908 Patent) at Cl. 5.

**Response:**  PACT does not dispute material fact 98.

99.     Claim 5 of the '908 Patent incorporates all limitations of claim 4 of the '908 Patent. Ex. 5 ('908 Patent) at Cl. 5.

**Response:**  PACT does not dispute material fact 99.

100.    Claim 4 of the '908 Patent reads as follows:

A system, the system comprising:

    a processing system comprising

        a plurality of processors; and

        at least one separated cache not part
        [of] any processor;

a bus system connecting the processing system to one or more external devices;

at least one interface transmitting data between the processing system and external devices via the bus system;

at least some of the plurality of processors, the at least one interface, and the at least one separated cache having a module identification (ID); and wherein

the at least one interface to transmit data via the bus system using a protocol, comprising:

> i.     the module ID of an interface, a processor, a separated cache requesting a transmission,
>
> ii.    the module ID of an interface, a processor, a separated cache receiving a transmission; and/or
>
> iii.   the address of a target within the interface, the processor, the separated cache or the external device unit receiving a [transmission]; and

wherein the at least one separated cache comprises a separated cache segment for at least some of the plurality of processors; the system further comprising:

> *an interconnect system interconnecting each of the separated cache segments with each of the processors, each of the processors with neighboring processors, and each of the separated cache segments with neighboring separated cache segments;* and
>
> an arbiter, the arbiter controlling access of a processor to the interconnect system.

Ex. 5 ('908 Patent) at Cl. 4 (emphasis added).

**Response:** PACT does not dispute material fact 100.

101.   Claim 4 of the '908 Patent requires, in part, "a plurality of processors." Ex. 5 ('908 Patent) at Cl. 4.

**Response:** PACT does not dispute material fact 101.

102.    Claim 4 further requires, in part, "***an interconnect system interconnecting*** each of the separated cache segments with each of the processors, ***each of the processors with neighboring processors***, and each of the separated cache segments with neighboring separated cache segments" (emphasis added).  Ex. 5 ('908 Patent) at Cl. 4.

**Response:**  PACT does not dispute material fact 102 as written, but notes that the emphases do not appear in the original and disputes Intel's inferences drawn from the emphases and Intel's interpretation of those excerpts.

103.    Based on a petition filed by Intel, the PTAB instituted on August 11, 2020 an IPR proceeding concerning claims 4 and 5 of the '908 patent, IPR2020-00518.  Ex. 44 (IPR202000518, Paper 3); Ex. 45 (IPR2020-00518, Paper 12).

**Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by Dr. Conte.  *See* Ex. S ('908 Patent Owner Response) at 28; Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

104.    In its Petition, Intel argued that two combinations of prior-art references invalidated claim 5 of the '908 Patent, both combinations including U.S. Patent No. 5,680,571 ("Bauman").  Ex. 44 (IPR2020-00518, Paper 3) at 4.

**Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by

Dr. Conte.  *See* Ex. S ('908 Patent Owner Response) at 28; Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

    105.    Figure 6 of Bauman, as annotated and used by Intel in IPR2020-00518, is shown below:



*E.g.*, Ex. 44 (IPR2020-00518, Paper 3) at 53.

    **Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by Dr. Conte.  *See* Ex. S ('908 Patent Owner Response) at 28; Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

106.    With regard to claim 5's (via claim 4) requirement of "an interconnect system interconnecting . . . each of the processors with neighboring processors," Intel made the following statement in its Petition:

> As shown in Bauman's Figure 6, each cache segment (blue) is interconnected to each instruction processor (yellow) via the data paths (gold).  Likewise, each instruction processor (IPa through IPd) is interconnected to each neighboring instruction processor (on both the input buffer and output buffer sides) via the data paths.  Lastly, each of the cache segments is interconnected to each neighboring cache segment via the data paths.

Ex. 44 (IPR2020-00518, Paper 3) at 53-54 (citations omitted).

**Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by Dr. Conte.  *See* Ex. S ('908 Patent Owner Response) at 28; Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

107.    PACT made the following statements in its Patent Owner Response:

> Bauman's instruction processors are ***not*** interconnected.  Each processor is connected to the 'gold' interconnect by way of an input buffer or an output buffer. The input buffers and output buffers ensure that data only travels in one direction. In other words, there is no data path between one processor and a neighboring processor.

Ex. 46 (IPR2020-00518, Paper 21) at 28 (emphasis in original).

**Response:**  Disputed as to materiality and completeness.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by Dr. Conte.  *See* Ex. S ('908 Patent Owner Response) at 28; Ex. U ('908 Patent Owner Sur-Reply) at 12-13.  Further, PACT clearly articulated that Bauman's instruction processors are not interconnected because "***data only travels in one direction***," such that the

particular arrangement of input and output buffers in Bauman does not provide a data path between neighboring processors.  *See* Ex. T (Annavaram '908 Declaration) ¶ 58.  PACT only argued that when a ***cache segment*** (not a buffer) is interposed between two neighboring arguments, the interconnection limitation is not satisfied.  *See* Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

108.    Paragraph 212 of Dr. Conte's opening report is  reproduced below including the image that appears in that paragraph:

> Each of the Accused Bus Instrumentalities comprises an interconnect system (e.g., the ring/mesh bus) interconnecting each of the separated cache segments (e.g., each ▇▇▇▇▇▇ with each of the processors (e.g., IA cores), each of the processors with neighboring processors (e.g., the neighboring IA cores), and each of the separated cache segments with neighboring separated cache segments (e.g., the neighboring ▇▇▇▇▇▇



> 93600DOC0064255 (Haswell Micro-Architectural Overview) at 8.

Ex. 6 (Conte Opening Report) ¶ 212

**Response:** PACT does not dispute material fact 108.

109.   Paragraph 70 of Dr. Conte's opening report is reproduced below including the image that appears in that paragraph:

> While not shown in the illustrations above, Intel's data processing cores and ████ ████ are connected to the ring using a cache box or "████ ████ has two sides. The ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████



> 93600DOC0025656 (Sandy Bridge ████ High Level Architectural Specification) at 93600DOC0025668; 93600DOC0493763 (Sandy Bridge (GSR) ████ /Ring/LLC Part 3) at 93600DOC0493764; *see also* 93600DOC0022114 (Jaketown ████) at 93600DOC0022129; 93600DOC0852321.

Ex. 6 (Conte Opening Report) ¶ 70.

**Response:** PACT does not dispute material fact 109.

110.   Paragraph 244 of Dr. Conte's opening report is reproduced below including the images that appear in that paragraph:

> The ████████████████████████████████████████
> ████████████████████████████████████████ includes a

plurality of bus segments that are connected to the core, for example ingress and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



93600DOCO137038. The C-Bo also includes a bus segment that connect the core to a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



93600DOC0494993 (left image); 93600DOC0025668 (right). Thus, there are a plurality of bus segments for each core in the CPU.

Ex. 6 (Conte Opening Report) ¶ 244.

**Response:** PACT does not dispute material fact 110.

111.    Paragraph 158 of Dr. Conte's opening report is reproduced below including the image that appears in that paragraph:

The ▮▮▮▮▮▮▮▮▮▮▮▮▮ include at least one FIFO buffer for transferring data onto the ring in the ▮▮▮▮▮▮▮▮



93600DOC0399647 (██_Egress Micro Architectural Specification)) at 3600DOC0399660; *see also* 93600DOC0025656 (Sandy Bridge ██ HAS) at 93600DOC0025831 ████████████████████████ ██████████ 93600DOC0591635 (Skylake Server / Nights Landing ██████ ████████ High-Level Architecture Specification) at 93600DOC0591710 ("████████████████ ████████████████").

Ex. 6 (Conte Opening Report) ¶ 158.

**Response:** PACT does not dispute material fact 111.

112.    Paragraph 143 of Dr. Conte's opening report is reproduced below including the image that appears in that paragraph:

Like the ring bus architecture, Intel's mesh bus architecture include a ████ that connects the data processor cores to the ████████ The illustration below shows a block diagram of the ████ As can be seen, there is a ████████████████ ████████████████ that connects the ████ to the ring.



93600DOC0613063 (Skylake Server Design for Burn-in) at 93600DOC0613080.

Ex. 6 (Conte Opening Report) ¶ 141.

**Response:** PACT does not dispute material fact 112.

113.    Dr. Conte cites the following image in paragraph 89 of his opening report as illustrating the Skylake microarchitecture:



Ex. 27 (93600DOC0140649) at -40653; Ex. 6 (Conte Opening Report) ¶¶ 89, 141.

**Response:**  PACT does not dispute material fact 113.

114.    In all of the Accused '908 Products, there is an ████████████ between each ██████████████████ Ex. 27 (93600DOC0140649) at -40653; Ex. 6 (Conte Opening Report), ¶¶ 70, 89, 141, 143, 158, 212, 244; Ex. 7 (Conte Reply Report) ¶¶ 235-38; Ex. 25 (Mowry Rebuttal Report Vol. 3), ¶¶107-112.

**Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT's arguments in IPR2020-00518 did not disclaim the use of buffers to interconnect neighboring processors, and thus are fully consistent with the infringement analysis set forth by Dr. Conte.  Further, PACT clearly articulated that Bauman's instruction processors are not interconnected because "***data only travels in one direction***," such that the particular arrangement of input and output buffers in Bauman does not provide a data path between neighboring processors.  *See* Ex. T (Annavaram '908 Declaration) ¶ 58.  PACT only argued that when a ***cache segment*** (not a buffer) is interposed between two neighboring arguments, the interconnection limitation is not satisfied.  *See* Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

115.    In all of the Accused '908 Products, neighboring processor cores are not directly connected to each other.  Ex. 27, (93600DOC0140649) at -40653; Ex. 6 (Conte Opening Report) ¶¶ 70, 89, 141, 143, 158, 212, 244; Ex. 7 (Conte Reply Report) ¶¶ 235-38; Ex. 25 (Mowry Rebuttal Report Vol. 3), ¶¶107-112.

**Response:**  Disputed as to materiality.  As discussed in PACT's opposition brief, PACT did not argue that neighboring processors must be "directly connected" in IPR2020-00518, nor does claim 5 of the '908 patent require "direct" connection.  PACT clearly articulated that Bauman's instruction processors are not interconnected because "***data only travels in one direction***," such that the particular arrangement of input and output buffers in Bauman does not

provide a data path between neighboring processors, and not because a "direct" connection without any intervening elements is required by the claim.  *See* Ex. T (Annavaram '908 Declaration) ¶ 58.  PACT only argued that when a ***cache segment*** (not a buffer) is interposed between two neighboring arguments, the interconnection limitation is not satisfied.  *See* Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

**Response To Intel's Facts Regarding Willful Infringement**

116.    In response to Intel's Interrogatory Number 6 concerning PACT's contentions for willful infringement, PACT stated the following:

> "PACT incorporates by reference its response to Intel's Interrogatory No. 4 and all supplements thereto."

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 18.

**Response:**

117.    PACT's response to Intel's Interrogatory Number 4 states the following:

**Copying**

In a December 6, 2005 presentation, PACT presented Intel with a specific XPP architecture incorporating ███████.  *See* PACTINTEL00220743.  This architecture embodies the inventions claimed in the patents-in-suit. Intel subsequently released its multicore and ring bus architectures, which are substantially similar to and incorporate the patented features of the XPP architecture disclosed in PACT's December 6, 2005 presentation. Intel's access to the details of PACT's processor architecture and the subsequent high degree of similarity between the disclosed PACT architecture and the subsequent Intel multicore and ring bus architectures demonstrates copying by Intel of PACT's patented inventions.

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 11-12.

\*\*\*

**Copying**

Intel copied PACT's patented XPP processor architecture after the failure of its first mainstream multicore processor architecture, Nehalem, which did not incorporate PACT's patented XPP architecture.

PACT incorporates by reference its response to Intel's Interrogatory No. 28 and all supplements thereto.

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 12.

***

**Copying**

On March 22, 2005, PACT contacted individuals at Intel to pitch use of its XPP architecture in Intel products. PACTINTEL02830490. In a presentation dated May 11, 2005, PACT described a specific XPP architecture incorporating ███████ *See* PACTINTEL00679489. This architecture describes features of the inventions claimed in the patents-in-suit. PACT provided Intel with further information regarding a specific XPP architecture incorporating ████████ in correspondence and presentations throughout 2005 and 2006. *See* PACTINTEL01716613, PACTINTEL00197293, PACTINTEL02829897-PACTINTEL02830478; PACTINTEL02830479-PACTINTEL02830491. Intel subsequently released its multicore and ring bus architectures, which are substantially similar to and incorporate the patented features of the XPP architecture disclosed in PACT's presentations throughout 2005 and 2006. *See* PACTINTEL01716613, PACTINTEL00197293, PACTINTEL02829897-PACTINTEL02830478; PACTINTEL02830479-PACTINTEL02830491. Intel's access to the details of PACT's processor architecture and the subsequent high degree of similarity between the disclosed PACT architecture and the subsequent Intel multicore and ring bus architectures suggests copying by Intel of PACT's patented inventions.

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 13.

**Response:**

118.   PACT's Response to Intel's Interrogatory No. 28 states the following:

PACT incorporates by reference its responses to Interrogatory Nos. 4 and 27, including all supplements. The XPP-III architecture embodies at least certain claims of the patents-in-suit, as set forth in PACT's response to Interrogatory No. 27 and all supplements. Further, Intel infringes the asserted claims of the patents-in-suit, as set forth in PACT's infringement contentions.

On information and belief one or more of the persons that received the presentation at PACTINTEL00220743, or similar presentations describing PACT's XPP-III architecture, or were involved in discussions with PACT relating to PACT's XPPIII

architecture, were involved with the design or development of accused products, or or communicated information to persons working on the accused products. For example, Intel's 30b6 witness, Pam Hays, admitted that she was not aware of any measures taken by Intel to ensure that the engineers who received PACT's confidential technical information did not contribute to the development of Intel's infringing Sandy Bridge architecture, e.g., by instituting a "clean room" policy. *See* Hays Tr. (Rough) at 94:10-96:12. Intel's witness Aditya Navale also testified that "Intel does not have any policy that compartmentalizes technology development" and that "[p]eople are free to communicate and learn from each other, and they can discuss whatever products they are working on." Navale Tr. (Rough) at 120:21–121:25.

Ex. 28 (Responses to Interrogatories Nos. 24-30) at 18-19.

**Response:**

119.    PACT's Response to Intel's Interrogatory No. 27 states the following:

PACT's XPP-III architecture embodies at least claim 2 of the '872 patent; claim 1 of the '593 patent; claim 1 of the '807 patent; and claim 12 of the '812 patent.

Ex. 28 (Responses to Interrogatories Nos. 24-30) at 19.

**Response:**

120.    PACT's Response to Intel's Interrogatory No. 6 states the following:

Intel has been aware of its infringement of the Asserted Patents at least since February 8, 2019 when the original complaint PACT filed in Delaware (Case No. 1:19-cv-00267) was served on Intel and on information and belief far before. PACT has asked Intel to produce each document identifying any of the asserted patents and will amend this response after it has analyzed and followed up on said document production.

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 15.

***

Intel has further been aware of the Asserted Patents or their applications at least as early as May 30, 2012, when PACT XPP Technologies' then-Chairman Mr. Weber emailed Ms. Pamela Hays at Intel, attaching an updated list of PACT XPP Technologies' patents and patent applications. Mr. Weber's e-mail expressly noted that PACT had "processor patents" that it was offering for sale to Intel, and the spreadsheets attached to his e-mail identified at least the '763 Patent and the

application corresponding to the '593 Patent. *See, e.g.*, 93600DOC1988351-54. As noted above, by this time, Intel had released its Sandy Bridge architecture as well as subsequent multicore "ring bus" architectures. Thus, Intel knew or should have known of its infringement at least as early as May 30, 2012 when it received Mr. Weber's notice.

PACT incorporates by reference the deposition testimony of Martin Vorbach, Goetz Gleichmann, and Pamela Hays, and the exhibits thereto.

Ex. 26 (Responses to Interrogatories Nos. 4, 6, and 9) at 17.

**Response:**

121.    During her deposition, Ms. Pam Hays of Intel testified as follows:

Q. Sure.  Do you know whether Intel instituted any clean room to make sure that no technology disclosed by PACT to Intel was exposed to people who were working on the Sandy Bridge project?

MS. LOTFOLLAHI: Same -- same objection.

THE WITNESS: Okay. Here is what I can -- I can tell you: The -- the microprocessor team is separate from the team that was evaluating this technology. That team was under an NDA when the information was shared. So they would not have shared it over into the microprocessor team because it had to have a -- a need to know. And they didn't have a need to know.

\*\*\*

THE WITNESS: What I can tell you is that they were two separate groups and that the information would have only been shared with those that had a need to know.

\*\*\*

Q. But in any event, nobody has ever mentioned to you that there was any effort made to have a clean-room isolation of the Sandy Bridge group from the group that talked to PACT. That's nothing anybody ever talked to you about; is that correct?

MS. LOTFOLLAHI: Outside the scope.

THE WITNESS: Again, as you just mentioned, the Sandy Bridge team was two years later. I -- I don't understand why there would be a problem there.  I -- again, we had an NDA in place.  We respect third-party information. We don't go and share it and -- and misuse it. So we're a very ethical company on that line.  So I -- I can surmise that no, but I can't tell you specifically for sure no.

BY MR. LORIG:

Q. Well, Ms. Hays, the first time I ever heard about an Intel clean room was when AMD sued Intel because they didn't use a clean room. So reasonable people can be differ about the ethics of your company. But my question was a different question. *My question was whether anybody had told you that there was any clean room or isolation of Intel engineers who talked to PACT from working on the later Sandy Bridge, and either you've heard of such an effort or you haven't heard such an effort.*

MS. LOTFOLLAHI: I object to the argumentative preamble to the question. And that's been asked and answered and it's also outside the scope.

THE WITNESS: *And this time you've asked me did anybody tell me specifically if anybody -- no, I had no reason to ask about that.*

BY MR. LORIG:

Q. Okay. *Do you know whether any of the Intel engineers who discussed PACT's technology with PACT were later assigned to the Sandy Bridge project?*

MS. LOTFOLLAHI: Objection. Calls for speculation and outside the scope.

THE WITNESS: I *would have no reason to know that. I'm not part of that organization.*

Ex. 30 (Hays Dep. Tr.) at 107:1-4; 108:2-5; 108:16-110:9.

**Response:**

122.     Mr. Goetz Gleichmann of PACT testified "I don't know" if there was copying and

"that is pure assumption" in the following:

Q. Let me ask you this. Do you think that Intel copied the contents of the presentation marked Exhibit 4?

MR. HAGIZ: Objection, scope, calls for speculation, calls for a legal conclusion.
A. I don't -- I don't know. That's an internal matter of Intel. No, I –

***

Q. Do you have any -- withdrawn. It's my understanding that you think Intel infringes PACT's patents. *But do you think that Intel actually took the presentation marked Exhibit 4 and copied whatever technology is described in that presentation and used that in Intel's products?*

MR. HAGIZ: Objection, asked and answered, foundation, outside scope.

A. *I -- I cannot look into -- into what's happening in the corporation Intel.* But Intel got knowledge of a high tech technology at a very early stage, came up with the same technology a couple of years later.  So there might be grounds that this technology and this presentation was taken  in full or in part to develop new ideas. *But that is pure assumption.*

Ex. 31 (Gleichmann Dep. Tr.) at 61:17-23, 62:13-63:19.

123.    Mr. Martin Vorbach of PACT, a named inventor of the Asserted Patents, testified:

"I cannot tell you what they copied or if they copied."  Ex. 32 (Vorbach Dep. Tr.) at 626:22-

627:13.

**Response:**

124.    Dr.  Conte testified to the following:

Q. …*Do you believe that the  XPP architecture actually practices any of the asserted claims in this case?*

MR. HAGIZ: Objection. Scope. Asked and 1 answered.

THE WITNESS: *I didn't make a determination of that one way or the other.*

Ex. 11 (Conte Dep. Tr.) at 63:20-64:3.

**Response:**

125.    PACT's expert Dr. Mark Chandler testified that he had no opinions on willfulness,

copying, or whether PACT's technology is embodied in Asserted Patents in the following:

Q. Okay. You are not offering any opinions in this case on whether or not Intel willfully infringed any of the asserted patents; right?

A. I'm focusing, again, on the damages, the appropriate measure of damages, and also on licensing aspects of this case. And the question you just asked is well beyond the scope of my analysis.

Q. You're not offering any opinions regarding whether or not Intel copied PACTs technology; correct?

A. Well, as with previous answers, I certainly have read discussions along those lines but I'm not offering any opinion on that. It's well beyond the scope of the financial and licensing analysis that I have conducted.

Ex. 34 (Chandler Dep. Tr.) at 69:16–70:6.

**Response:**

126.    In his expert report, PACT's expert Dr. Glenn Reinman stated the following:

2. Copying

1271. I understand that in a December 6, 2005 presentation, PACT presented Intel with a specific XPP architecture incorporating ███████ See PACTINTEL00220743. This architecture embodies the inventions claimed in the patents-in-suit. Intel subsequently released its multicore and ring bus architectures, which are substantially similar to and incorporate the patented features of the XPP architecture disclosed in PACT's December 6, 2005 presentation. Intel's access to the details of PACT's processor architecture and the subsequent high degree of similarity between the disclosed PACT architecture and the subsequent Intel multicore and ring bus architectures demonstrates copying by Intel of PACT's patented inventions.

Ex. 16 (Reinman Rebuttal Report) ¶ 1271.

**Response:**

127.    On May 30, 2012, Peter Weber of PACT sent an e-mail with three attachments to Pam Hays of Intel, which is reproduced below.

```
Message
From:          Peter Weber [peter.weber@pactxpp.com]
Sent:          5/30/2012 1:54:38 AM
To:            Hays, Pamela J [/O=INTEL/OU=Americas01/cn=Workers/cn=Hays, Pamela J]
Subject:       PACT XPP patent portfolio
Attachments:   EDA_Tool Patents.xlsx; FPGA Patents.xlsx; Processor Patents.xlsx


Hi Pam,

Attached please find an overview of our US patent portfolio. In addition to
the patents granted we have another 45 applications pending. Some of them
already approved waiting for final publishing.
Of course all of the US patents do have a European counterpart and some of
the patents are also filed in Japan.
The patents for sale are the ones named 'processor patents'.
We are not in a hurry but, would appreciate you keep us in the loop as you
are making your decision, resp. let us know how much time you need for the
evaluation.

Best regards
Peter

Peter Weber
Chairman

PACT XPP Technologies AG
peter.weber@pactxpp.com
fon: +1.408.374 9470
fax: +1.408.370 0727
www.pactxpp.com
```

Ex. 35 (93600DOC1988351).

      **Response:**

      128.   One of the attachments of Ex. 35 is titled "FPGA Patents.xlsx."  Ex. 35 (93600DOC1988351) at -88353.

      **Response:**

      129.   Ex. 35 contained a list including the application number corresponding to the '593 Patent.

      **Response:**

## PACT'S COUNTER-STATEMENT OF FACTS

PACT additionally provides the following statement of facts in support of its opposition to Intel's Motion for Summary Judgment.

### Intel's Motion for Summary Judgment Regarding the '047 Patent

1.      U.S. Pat. App. No. 10/469,909 (the "'909 application") includes the following statement: "According to PCT/DE00/01869 (PACT13/PCT), a group of PAEs may be designed as a processor in particular." Ex. AI (U.S. Pat. App. Pub. No. 2005/0066213) at ¶ 74.

2.      The '047 patent claims priority to the '909 application.  '047 patent at 2.

3.      PCT/DE00/01869 ("PACT13") was filed on June 13, 2000 and issued as U.S. Pat. No. 8,230,411 (the "'411 patent").  Ex. AJ ('411 patent) at 1.

4.      Figure 17 of the '411 patent "illustrates the operation of an array of PAEs as a register processor, according to an example embodiment of the ['411 patent] invention."  '411 patent at 3:4-6.

5.      On May 7, 2022, Dr. Glenn Reinman provided a rebuttal expert report.  (Ex. H, "Reinman Rebut. Rpt.").

6.      In his rebuttal report, Dr. Reinman opined that "[a] POSITA would understand that [Figure 17 of the '411 patent] is similar to the von Neumann architecture (processor)."  Reinman Rebut. Rpt. at ¶ 56.

7.      In his rebuttal report, Dr. Reinman opined that "A POSITA would have understood that PACT's XPP architecture is an improvement of von-Neumann architecture and balances the sequential data processors and sequential instruction processors."  Reinman Rebut. Rpt. at ¶ 69.

8.      On August 10, 2016, PACT provided a response to an Office Action rejecting the '047 patent's application as obvious over prior art reference U.S. Pat. No. 5,502, 838 ("Kikinis"). Ex. AK (August 10, 2016 Response to Office Action) at 14.

9.      PACT's August 10, 2016 response to the patent examiner's rejection of the '047 patent application included the following statement: "However, Kikinis does not disclose a multiprocessor system comprising sequential data processors. All the Kikinis processors are

conventional processors and all the same architecture. See, the architecture disclosed in Fig. 2, and at, e.g., 5: 10-9-13, where 'computational and logic load [may be shifted] for one microprocessor to another, fighting load management to limit temperature rise.' Such shifting of computational load is only possible if the computations are not affected by the microprocessor selected. In contrast, as well known, with sequential data processing architectures, where results in one processor are fed to another, for each to perform a separate computation that may be computationally different from the other processors." Ex. AK (August 10, 2016 Response to Office Action) at 14.

**Intel's Motion for Summary Judgment Regarding the '593 Patent**

10.     Dr. Conte opines that a block diagram of an exemplary ring-based bus system depicted below illustrates one example of Intel's infringement. *See* Ex. A (Conte Opening Rpt.) at ¶¶148-151; Ex. C (Conte Reply Rpt.) at ¶¶169-182. The "at least some of the data processing cores" may be, for example, the bottom-most CPU core (circled in purple) and the "physically assigned one of the plurality of memory units" may correspond to the ███████████████

███████████████████ *Id.* A "physically dedicated connection" (green arrow) connects the

███████████████████████████ This same LLC slice is also "accessible by another of the data processing cores" (circled in orange) "via a secondary bus path of the bus system" (bottom-most white arrow). The secondary bus path travels through Intel's "ring" (pink arrows arranged generally in a circle). *Id.*





11.     The illustrations below shows that a core has a dedicated physical connection to its █████ ████████ using the straight arrow from the core to the ████. *See* Ex. A (Conte Opening Rpt.) at ¶151. In the image on the left, this is represented by the straight line going from the Core to the █ ████████ *Id.* On the image on the right, this is represented by the dedicated path from the ████████████████████ *Id.* Each core can also access another core's ████████████ over the ring. *Id.*



12.     In paragraph 172 of Dr. Conte's reply report, Dr. Conte states, in part:

As I explain above with respect to limitations 1d/16d, the ████████████
████████████████████████████████████████████████████████████████
████████████████████████████  █████████████████████████████████
███████████████████  ████████████████  ████████  ████████████
████████████████████████████████████████

13.     In paragraph 78, Volume 2 of Dr. Mowry's rebuttal report, Dr. Mowry states:

As shown above, the ████████████████ are interfaces between the ring and the core
and between the ring and the LLC slice, respectively.

14.     In paragraph 179 of Dr. Conte's reply report, Dr. Conte states:

Separately, even if the accused "secondary bus path" extends into the CBo interface as
Dr. Mowry alleges in the figure below, a POSITA would understand that the
insignificant overlapping portion circled in red only relates to the ████████████
██████████████  to the ████████████████████████████████████
███████ has a "physically dedicated connection" with the collocated ████████
████████████████  By analogy, a POSITA would understand that different paths
can be used to reach Rome by different travelers even if those travelers are forced to
walk up the same final steps to reach the gates of the city.

15.     The CacheBo merely provides an *interface* between the ring and the ████████

Ex. A (Conte Rpt., ¶172).  A POSITA would understand that such an interface serves as the port

of ***access*** to ██████████████████████████████████ *Id*.

16.     The ████/Mesh stop circuitry shown below serves as an interface between the vertical and horizontal half-rings and any ████████ present at the node.



Ex. A (Conte Rpt., ¶174).

17.     The path through the *ring* that leads to and terminates at the ████ (which serves as the port of *access* to the ████████ is the relevant path for purposes of assigning the "secondary bus path" because that is the path by which the ████████ is made "accessible" to ████████ CPU cores.  Ex. A (Conte Rpt., ¶172).

18.     The only claim limitation that PACT challenged at the pre-institution phase of the IPR proceeding was limitation 1[e]/16[e], "**the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction**." *See* Ex. K (Patent Owner Response) at 12-30 (PACT construing limitation 1[e]/16[e] and arguing that Balmer and Budizinski do not disclose 1[e]/16[e]); Ex. G (IPR Decision) at 16-24 (denying both Balmer and Budizinski grounds because Petitioner failed to show these references disclose limitation 1[e]/16[e]).

19.    In its Petition for IPR, Intel interpreted limitation 1[f]/16[f] as allowing for overlap between the "physically dedicated connection" and the "secondary bus path." Ex. J (Petition) at 33-35.

20.    In its Petition for IPR, Intel interpreted limitation 1[f]/16[f] as allowing for overlap between the "physically dedicated connection" and the "secondary bus path." Ex. J (Petition) at 33-35.

21.    In its Petition for IPR, Intel alleged that the Balmer reference discloses a "physically dedicated connection" to the memory units (the green lines in the image below) and a secondary bus path (the orange lines in the image below):



Ex. J (Intel Petition) at 34-35. The physically dedicated connection" to the memory units (the green lines in the image above) and a secondary bus path (the orange lines in the image above) that Intel identified in the Petition overlap with one another.

22.    In the pre-institution phase of the IPR proceeding, PACT did not challenge limitation 1[f]/16[f], **the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system**. *See* Ex. K (Patent Owner Response) at 12-30 (PACT construing limitation 1[e]/16[e] and arguing that Balmer and Budizinski do not disclose 1[e]/16[e]); Ex. J (IPR Decision) at 16-24 (denying both Balmer and Budizinski grounds because Petitioner failed to show these references disclose limitation 1[e]/16[e]).

**Intel's Motion for Summary Judgment Regarding the '631 Patent**

23.    In its Patent Owner Response in IPR2020-00531, PACT stated as follows (including images):

Comparing the claim element and the description in the '631 Patent specification and history with Budzinski's data bus, it is clear that Budzinski only shows one data bus segment for each processor. This is readily observable by considering Dr. Mazumder's identification of the "four" bus segments in the context of the entire data bus. Below is a color-coded version of Budzinski's Figure 19, included in Dr. Mazumder's report. Using processor 2 (PR2) as an example, I have added annotations showing each of the four bus segments that Dr. Mazumder identified in Figure 20 above.



Only the bus segment labelled "2" is a bus segment "for" PR2 (assuming the memory 34 for each processor is part of the processor, as Dr. Mazumder does). The remaining bus segments are not "for" PR2, and at times may not be accessible to PR2. For example, if PR3 needs to access data stored in the RAM memory module directly below PR2, then bus segment 4 will be connected through the bus control unit (BCU 58) to form a path to PR3, and will be disconnected from the path to PR2 through bus segment 2. Similarly, if PR3 needs to access data stored in the RAM memory module directly below PR1, then bus segments 1 and 3 will be connected to each other through BCU 58 to form a path between PR3 and the requested RAM memory module, and both bus segments will be disconnected from the path to PR2 through bus segment 2.

Ex. L ('631 Patent Owner Response) at 29-31.

24.    In its Petition in IPR2020-00531, Intel stated as follows (including images):

As discussed above, each processor is connected to its own memory module and to the data bus (for accessing other processors' memory modules or off-chip memory) through a respective BCU. Supra Section X.C.1.a (preamble). Through the BCU, each processor is connected to a plurality of bus segments. Ex. 1001, ¶¶157-158. In reference to Figure 20 below, there is a "short bus 184" from the processor to the BCU (through a "memory mapper" element), a "short bus 186" from the processor's "memory module" to the BCU, and two "se[g]ments" of "data bus 56" extending on either side of the BCU. Ex. 1007, 34:37-35:10. The BCU controls which of the short buses and/or data bus segments is active for its processor using switches 178, 180, and 182. Id.; Ex. 1001, ¶¶157-158. Figure 20 (annotated) illustrates the structure of the BCU and demonstrates that there are at least four bus segments (green) for each processor, each segment controlled by switches (yellow):



Ex. 1007, Fig. 20; see also id., Fig. 21 (showing switches configured differently to provide alternative data path), Fig, 19, reproduced supra Section X.C.1.a, 34:28-20, 33:15-35:20. A POSA would have understood that both the short buses and data

bus segments are "bus segments" because they are buses defined on either end by one or more nodes (e.g., switches, memory modules, or memory mapper), much as the "bus segments" identified by Applicant during prosecution were buses defined on either end by switches. Ex. 1001, ¶¶157-158; Supra Section VII.B.

Ex. M ('631 IPR Petition) at 51-52.

25.     The following is an excerpt from the oral hearing from IPR2020-00531 including PACT's arguments and questions from the PTAB ALJs:

13 And in the Petition, they label those four segments 1,
14 2, 3, and 4. But if you look at that numbering in the context of
15 the actual data bus, Slide 44, going back to Figure 19 of
16 Budzinski as it's described by Dr. Annavaram, Exhibit 2023 at
17 paragraph 78, those four bus segments, only one of those --
18 segment 2 as Intel's labeled it -- connects to a processor. The
19 other bus segments are for other parts of the system. One is for
20 memory and one -- and two are shared as part of the data bus
21 that's commonly accessible.
22 JUDGE OGDEN: Mr. Hagiz, can you say -- I mean, there's
23 multiple bus segments here. Couldn't you sort of divide the
24 different segments into segments that correspond to each
25 processor? Putting aside the issue of whether they need to be
26 directly connected to the processor, but couldn't you, for
1 example, say that buses 2 and 4 directly correspond with processor
2 2, and similarly for the other processors, some way of saying at
3 least that they are -- that those buses are for that processor?
4 MR. HAGIZ: I don't think you can because all of those
5 other buses -- the big difference -- if we compared, for example,
6 what we saw in Figure 6 of the '908 patent, those four connections
7 to each processor, that processor can always use those
8 connections.
9 Now, it might not be able to use some of the other
10 connections, the segments that are on that horizontal line -- on
11 the horizontal lines, 104, right, because the switches might be
12 turned off so that something else can use those segments. But the
13 four segments connected to the processor, Figure 6 of the '908
14 patent, the processor can always access those. And that's the
15 same with Segment 2 in Budzinski. Right? The corresponding
16 processor for Segment 2 can always access that. That's not true
17 of those other segments.
18 So if you look at Segment 4, well, the bus control unit
19 might be set up for a particular memory access to connect the
20 memory module beneath processor 2. It might be set up to connect
21 that to processor zero. And what happens when that happens, the

22 bus segment that's labeled four, well, processor 2 can't use it,
23 at least not at that point in time.
24 So there's really no other segment other than that
25 segment 2 that is really for a particular processor. You really
26 can't divide them up in a way where we can say this other bus
1 segment really corresponds to one of the processors, not the
2 others -- or is not -- specifically to one of the processors.
3 JUDGE OGDEN: What about the second part of limitation
4 1-A? Couldn't you still say that, because of these BCUs, there's
5 a flexible -- there's a plurality of flexible data channels to
6 each processor because there are multiple possible paths that data
7 could take en route to each of the processors.
8 MR. HAGIZ: So, again, there's two requirements there.
9 There's a plurality and flexible. And, Your Honor, what you just
10 pointed out, the fact that you can set these bus control units to
11 create different paths, that gets us to flexible. Right? Because
12 at different points in time, we can activate different bus control
13 units and different switches in there to create different paths.
14 But there's still only one of those flexible paths for
15 every processor. Processor has to go through that Segment 2. And
16 that Segment 2 can be flexibly connected to those other common or
17 shared segments but you're always going through Segment 2.
18 Contrast that with the '908 patent in Figure 6, and there, we
19 actually have four flexible data channels. We have four
20 connections to Element 502 or 602, rather. Four connections there
21 that can each be used to form a flexible data channel, depending
22 on how you configure the other switches on that bus 104. We don't
23 have that in Budzinski.

Ex. N (IPR2020-00531 Oral Hearing Tr.) at 22:13-24:23


26.    In the '631 IPR Final Written Decision, the PTAB stated as follows:

Statements made during the prosecution of the '631 patent corroborate this understanding of the claim, because the applicant indicated that the switches in Figure 5 "divid[e] bus 104 into segments for each data processing unit 501–503," and "[e]ach segment may be selectively connected to other segments by the illustrated switches . . . so that multiple data paths might be provided to each data processing unit 501–503." Ex. 1004, 931. We are persuaded that upon reading this, a person of ordinary skill in the art at the time of the claimed invention would have understood that the applicant intended bus segment 104a to be "for" processing unit 501 because it is directly accessible to the processing unit, rather than being remotely accessible through a switched path involving other segments.

Ex. O (IPR2020-00531 Final Written Decision) at 17.

27.     The document produced by Intel under bates number 93600DOC0001345 was Exhibit 17 to the deposition of Dr. Todd Mowry, and includes the following image on page 93600DOC00001360:



Ex. P at 93600DOC00001360.

28.     Dr. Mowry testified as follows at his deposition in this case:

Q. Let me reask the question. Let me try to get
15 some of the language. So let me try to get
16 some of the language. Let me ask first, in
17 Figure 2 on Exhibit 17, the lines that are

18 labeled ████████████████████
19 egress down, the purple ones on the left side
20 of the figure --
21 A. Yes.
22 Q. -- what do those connect to on the left side
23 of the figure?
24 A. They connect to the ██████ .
25 Q. Okay, and is the ██████ the only thing that
1 can drive those signals or those wires?
2 A. Yes. The ████████ the thing that drives
3 those wires.
4 Q. And then the ██████ -- so the wires that we
5 can see in Figure 2 are on one end of the
6 ██████████████████████████
7 connects to its associated core, correct?
8 A. Yeah. Through the █████ there's another
9 interconnect on the opposite side of the
10 ████████████████████████ -- and
11 the core.
12 Q. And the ████████████████
██████████████████ , right?
14 MR. BENDIX: Objection, vague.
15 A. Well, so the ████████████████
██████████████ . I think
17 that's what you're asking.
18 BY MR. HAGIZ:
19 Q. Yeah, so I guess that's my question. An ████
████████████████████████
████████████████████
████████████ right?
23 A. The ████████████████████
24 on the other ████████████████
██████████ .
1 Q. And there's no -- there's only one core that
2 is connected to any particular ██████ , right?
3 A. Yes, that's correct.
4 Q. Now, there's another -- still on Figure 2 of
5 Exhibit 17, there's also an arrow in the
6 bottom left that's labeled to core, an arrow
7 facing leftward. Do you see that?
8 A. Yes.
9 Q. Now, that wire, does that connect to the
10 ██████ , or does it connect to the core
11 directly?
12 A. It connects to the ██████ .
13 Q. Okay, now, that wire will -- anything that's



84

14 communicated on that wire will be communicated
15 to the ███████████?
16 MR. BENDIX: Objection, vague.
17 BY MR. HAGIZ:
18 Q. Let me ask it a little bit differently. The
19 only destination that information on the to
██████████████ has is to the ████████
21 that stop, right?
22 A. Yes, that's correct.

Ex. Q (Mowry Dep. Tr.) at 203:14-204:3, 205:4-22.

29.    In his Reply Expert Report, Dr. Conte offered the following opinion (including
images):

> Dr. Mowry's opinion that there is only a single data channel from the uncore to the
> core is wrong. "███████████████████████████
> ████████████████████████ Skylake ███ HAS at 93600DOC0839108. These
> signals are transmitted via various interfaces, and a POSITA would recognize that
> each interface is equivalent to a channel. For example, the ██████████████
> ███████████████████████████████:



> Id. at 93600DOC0839113; see also Haswell ███ HAS at 93600DOC0632020

Ex. C (Conte Reply Rpt.) ¶ 246.

30.    The image excerpted in Paragraph 246 of Dr. Conte's reply report is from an Intel
document titled Skylake ███HAS, produced under bates number 93600DOC0838975, at -839113.

Ex. R at 93600DOC0839113.

**Intel's Motion for Summary Judgment Regarding the '908 Patent**

31.    In its Patent Owner Response in IPR2020-00518, PACT stated as follows (including images):

> Similarly, Petitioner has not shown that Bauman discloses an interconnect system that interconnects each of the three sets of recited elements. With reference to an annotated version of Figure 6 of Bauman, reproduced below, Petition contends: "[E]ach cache segment (blue) is interconnected to each instruction processor (yellow) via the data paths (gold). ... Likewise, each instruction processor (IPa through IPd) is interconnected to each neighboring instruction processor (on both the input buffer and output buffer sides) via the data paths. ... Lastly, each of the cache segments is interconnected to each neighboring cache segment via the data paths."



Petition, 53. However, Bauman's instruction processors are not interconnected. Each processor is connected to the "gold" interconnect by way of an input buffer or an output buffer. The input buffers and output buffers ensure that data only travels in one direction. In other words, there is no data path between one processor and a neighboring processor. See Ex. 2024, ¶ 58. Bauman's Figure 9 similarly shows each processor connected to the cache segments by way of dedicated read and write request registers, which only allow data to flow in one direction and prevent interconnection of the processors. Id., ¶ 59; see also Ex. 2026 at 66:12-67:4

Ex. S ('908 Patent Owner Response) at 27-29.

32.    PACT's expert in the '908 IPR, Dr. Annavaram, offered the following opinions in his expert declaration:

This understanding is confirmed by Figure 6, reproduced below, which similarly shows that each processor has its own separate connection to the Global SLC via an input buffer. Dr. Mazumder suggests that this figure shows that "each instruction processor is interconnected to neighboring instruction processors … via the data paths," but that is not correct. Because each of the four processors in Figure 6 has its own dedicated input buffer, there is no pathway from one processor to a neighboring processor through the buffers. Data only flows in one direction: from a processor to a cache, or from a cache to a processor; not from a process to a neighboring processor.

Ex. T (Annavaram '908 IPR Declaration) at ¶ 58

33.     In its Patent Owner Sur-Reply in IPR2020-00518, PACT stated as follows (including images):

Petitioner alternatively contends that "even if one combined Kabemoto and Bauman using Bauman's interconnect system as PACT proposes, this would still satisfy the claimed 'interconnect' system." Reply at 16. However, the Petition's proposed combination was to place Bauman's second-level cache on Kabemoto's snoop bus. See Petition at 54. Petitioner cannot now shift its theory on Reply to argue instead that Bauman's interconnect independently satisfies the claimed "interconnect system." See, e.g., Ariosa Diagnostics v. Verinata Health Inc., 805 F.3d 1359, 1367 (Fed. Cir. 2015) (noting that a Petitioners is "obligated to make an adequate case in its Petition and the Reply limited to a true rebuttal role," citing 37 C.F.R. §§ 42.104(b)(5) ,42.23(b)); 37 C.F.R. § 42.104(b)(5) ("The Board may exclude or give no weight to the evidence where a party has failed to state its relevance or to identify specific portions of the evidence that support the challenge.").

Petitioner's new theory also relies on a new claim construction argument—raised for the first time on reply—asserting that the claimed interconnect system—which expressly recites sets of connections between processors and cache segments—is satisfied even if each processor is only indirectly connected to other processors through the cache segments. Reply at 17. However, Petitioner's overly broad construction is contrary to the plain claim language, which expressly recites three sets of connections: (1) each of the separated cache segments with each of the processors, (2) each of the processors with neighboring processors, and (3) each of the separated cache segments with neighboring separated cache segments. If the claim contemplates indirectly connecting processors to neighboring process through the cache segments, then "each of the processors with neighboring processors" is superfluous language, because the claims already require connecting "each of the separated cache segments with each of the processors," thereby establishing an indirect connection between all processors. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with

an eye toward giving effect to all terms in the claim."). Petitioner's reliance on MEMS Tech. Berhad v. Int'l Trade Comm'n, 447 F. App'x 142, 151 (Fed. Cir. 2011) is unavailing, since that decision rested on the broad ordinary meaning of the term "electrically coupled," rather than a detailed limitation setting forth interconnections between specific sets of elements in a system.

Ex. U ('908 Patent Owner Sur-Reply) at 12-13.

## Intel's Motion for Summary Judgment Regarding Willful Infringement

34.    Intel has not claimed that it relied on advice of counsel to infringe any of the patents-in-suit.

35.    Plaintiff PACT XPP Schweiz ("PACT")'s German predecessor, PACT XPP, AG, entered into a non-disclosure agreement ("NDA") with Defendant Intel Corp. ("Intel") in 2005. Ex. V.

36.    After entering into the NDA, between 2005 and 2007, PACT made a series of presentations to technical and business personnel at Intel, in which PACT disclosed in detail the architecture of its breakthrough multicore processor technology, embodied in PACT's XPP-III multicore processor architecture.  Ex. W, Ex. X, Ex. Y.

37.    In 2012, PACT's then Chairman, Peter Weber notified Intel of PACT's recently issued patents and pending patent applications, including the '593 Patent. See Ex. Z, AA (Patent App. No. issued as the '593 Patent), Ex. AB at 158:23-154:12.

38.    Each of the Asserted Patents claims a priority date based on parent applications that existed and were published before 2005.  The '047 and '301 patents both claim priority to U.S. Pat. App. No. 10/469,909, which was published on March 4, 2005.  See '047 patent at 2; '301 patent at 1; Ex. AD (U.S. Pat. App. Pub. 2005/0066213).  The '593 patent claims priority to U.S. Pat. App. No. 10/398,546, which was published on July 1, 2004.  See '593 patent at 1; Ex. AE (U.S. Pat. App. Pub. 2004/0128474).  The '631 and '908 patents both claim priority to U.S. Pat. App. No. 10/471,061, which was published on April 21, 2005.  See '631 patent at 1; '908 patent at 1; Ex. AF (U.S. Pat. App. Pub. 2005/0086462).

39.     In PACT's email to Intel, PACT states that ███████████████████

████████████████████████████████████████████████

████████████████████████ Ex. Z.  Intel responded: ██████████████

████████████████████████████████████████████

███     *Id.*

40.     PACT filed a lawsuit in February 2019 including Case No. 19-cv-00267 filed in the District of Delaware, and Case No. 19-cv-00273 filed in Western District of Texas.  Both lawsuit asserted the same patents.  Ex. AG (Complaint in Case No. 19-cv-00267), Ex. AH (Complaint in Case No. 19-cv-00273).

Dated: July 18, 2022

Respectfully submitted,

FARNAN LLP

By: */s/   Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th
Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Frederick A. Lorig (*Pro Hac Vice*)
fredericklorig@quinnemanuel.com
QUINN EMANUEL
URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel : (213) 443-3047

Mark Tung (*Pro Hac Vice*)

marktung@quinnemanuel.com
QUINN EMANUEL
URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel.: (650) 801-5016

Ziyong Li (*Pro Hac Vice*)
seanli@quinnemanuel.com
QUINN EMANUEL
URQUHART &
SULLIVAN, LLP
50 California Street, 22nd
Floor
San Francisco, CA 94111
Tel.: (415) 875-6600

Ron Hagiz (*Pro Hac Vice*)
ronhagiz@quinnemanuel.com
QUINN EMANUEL
URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Tel.: (212) 849-7000

ATTORNEYS FOR PLAINTIFF
PACT XPP Schweiz AG

Dated: July 15, 2022