Originally Filed:  July 18, 2022
Redacted Version Filed:  July 18, 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PACT XPP SCHWEIZ AG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1006 (JDW) |
| | ) | |
| INTEL CORPORATION, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

## INTEL'S ANSWERING BRIEF
## IN OPPOSITION TO PACT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

OF COUNSEL:

Gregory S. Arovas P. C.
James E. Marina
Todd M. Friedman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Luke Dauchot
Christopher M. Lawless
Kevin Bendix
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
(213) 680-8400

Ellisen Shelton Turner
Sharre Lotfollahi
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90071
(310) 552-4200

Brandon H. Brown
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA  94104
(415) 439-1400

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Intel Corporation*

## TABLE OF CONTENTS

Page

I.   Stage Of The Proceedings And Summary Of The Argument.............................................. 1

II.  IPR Estoppel Does Not Apply to Intel's Invalidity Arguments. ....................................... 1

    A.   Prior Art Products Are Not Subject To IPR Estoppel.............................................. 3

    B.   Intel's Product Art Theories Rely On Supporting Materials That Were Unavailable For Use In Intel's IPRs And That Contain Information Distinct From The Printed Materials PACT Cites. ................................................. 6

        1.   The TI TMS320C80 System Is Not Cumulative Of Balmer And/Or The Master Processor User's Guide. ........................................................... 8

        2.   IBM's Power4 System Is Not Cumulative Of The Power4 Redbook. .......................................................................................................... 10

        3.   The Intel P6 System With Orion Is Not Cumulative Of The Pentium Pro Developer's Manual. ............................................................. 11

        4.   The Sequent NUMA-Q Is Not Cumulative Of Safranek And/Or The P6 Manuals Vols. 1–2........................................................................ 12

        5.   The Altera Excalibur Is Not Cumulative Of The Manuals, Datasheets, And Product Notes Cited By PACT. ...................................... 13

III. Intel Has Offered Evidence Raising A Genuine Dispute That The Licensee Products Practice The '047 And '301 Patents. ................................................................. 13

    A.   PACT Mischaracterizes Dr. Mowry's Opinions Regarding The '047 Patent........................................................................................................................ 15

    B.   PACT Concedes A Genuine Dispute Regarding The '301 Patent By Failing To Address Multiple Claims That Dr. Mowry Included In His Marking Analysis. ..................................................................................................... 17

    C.   PACT's Infringement Analysis Applies The Interpretation It Now Criticizes. ................................................................................................................. 17

IV.  Intel Does Not Oppose Summary Judgment Of Its Fifth-To- Seventh Affirmative Defenses Or First Counterclaim......................................................................................... 19

V.   Genuine Issues Of Material Fact Preclude Summary Judgment On Intel's Inequitable-Conduct Defense............................................................................................... 20

A.     Fact Issues Preclude Summary Judgment Regarding PACT's "Burying" Of The TMS320C80 References. ........................................................................ 20

1.     "Burying" material prior art in voluminous IDSs is a legally cognizable inequitable-conduct theory. ................................................... 20

2.     Intel has marshalled evidence establishing that the buried TMS320C80 References were but-for material to patentability .............. 21

3.     Intel's evidence shows that Messrs. Vorbach, Grunberger, and Heller intended to deceive the PTO. ......................................... 23

B.     Fact Issues Preclude Summary Judgment Based On Mr. Vorbach's False Inventorship Declarations. ..................................................................... 26

C.     Fact Issues Preclude Summary Judgment Regarding Rambus's Written Opinions Regarding Lack Of Inventorship And Lack Of Support For The Asserted Claims. ................................................................................... 29

VI.    Conclusion ................................................................................... 30

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) .................................................................... 15

*Bringham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*,
  2010 WL 3907490 (D. Del. Sept. 21, 2010) ................................................ 29

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  326 F.3d 1226, 66 USPQ2d 1481 (Fed. Cir. 2003) ..................................... 30

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994) ...................................................................... 29

*California Inst. of Tech. v. Broadcom Ltd.*,
  2019 WL 8192255, *order corrected*, 2019 WL 8807924 (C.D. Cal. Nov. 21, 2019,
  *and aff'd*, 25 F.4th 976 (Fed. Cir. 2022) .............................................. 6, 19

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
  No. 17-1612 (MN), D.I. 405 (D. Del. July 8, 2022) ............................... 4, 5

*Clearlamp, LLC v. LKQ Corp.*,
  2016 WL 4734389 (N.D. Ill. Mar. 18, 2016),
  *judgment entered*, 2016 WL 7013478 (N.D. Ill. Nov. 30, 2016) ................ 6

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
  2020 WL 7011768 (W.D. Tex. Oct. 28, 2020) ....................................... 1, 7

*Contour IP Holding, LLC v. GoPro, Inc.*,
  2020 WL 109063 (N.D. Cal. Jan. 9, 2020) ..................................................... 7

*Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*,
  99 F. App'x 911 (Fed. Cir. 2004) ................................................................. 17

*Esco Corp. v. Cashman Equip. Co.*,
  158 F. Supp. 3d 1051 (D. Nev. 2016) .......................................................... 25

*Everlight Elecs. Co. v. Nichia Corp.*,
  143 F. Supp. 3d 644 (E.D. Mich. Oct. 20, 2015) ....................................... 28

*Fiskars, Inc. v. Hunt Mfg. Co.*,
  221 F.3d 1318 (Fed. Cir. 2000) .................................................................... 21

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010) .................................................................... 15

*In re DMF, Inc.*,
  858 F. App'x 361 (Fed. Cir. 2021) .................................................................. 7

*In re Koninklijke Philips Pat. Litig.*,
  2020 WL 7392868 (N.D. Cal. Apr. 13, 2020) ................................................ 3, 4, 10

*Intell. Ventures II LLC v. Kemper Corp.*,
  2016 WL 7634422 (E.D. Tex. Nov. 7, 2016) .................................................. 3

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
  2019 WL 2959568 (E.D. Tex. Apr. 18, 2019) ................................................ 15, 17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. 18-00452-WCB (D. Del. June 15, 2022) .................................................. 7

*Leader Techs., Inc. v. Facebook, Inc.*,
  No. 08–862–LPS, 2011 WL 1514701 (D. Del. Mar. 14, 2011) .............................. 17

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
  2020 WL 5512132 (N.D. Ill. Sept. 14, 2020) .................................................. 4

*Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) .................................................................. 19

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
  397 F. Supp. 3d 560 (D. Del. 2019) ............................................................ 25

*Microchip Tech. Inc. v. Aptiv Servs. US LLC*,
  2020 WL 4335519 (D. Del. July 28, 2020) ................................................ 2, 4, 5, 7

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
  271 F. Supp. 3d 990 (E.D. Wis. 2017) .......................................................... 6

*Molins PLC v. Textron, Inc.*,
  48 F.3d 1172 (Fed. Cir. 1995) .................................................................. 21

*Ohio Willow Wood Co. v. Alps South, LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) .................................................................. 25

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
  2019 WL 861394 (N.D. Ill. Feb. 22, 2019) .................................................... 6

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 22

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
  853 F.3d 1370 (Fed. Cir. 2017) .................................................................. 15

*SPEX Techs. Inc. v. Kingston Tech. Corp.*,
   2020 WL 4342254 (C.D. Cal. June 16, 2020) ........................................................ 4

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
   2021 WL 982728 (D. Del. Mar. 16, 2021) ............................................................ 25

*Star Envirotech, Inc. v. Redline Detection, LLC*,
   2015 WL 4744394 (C.D. Cal. Jan. 29, 2015) ........................................................ 7

*Sysmex Corp. v. Beckman Coulter, Inc.*,
   2022 WL 1503987 (D. Del. May 6, 2022),
   *R&R adopted*, 2022 WL 1744573 (D. Del. May 31, 2022) .................................... 27

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ..................................................................... 22, 23

*Wasica Fin. GmbH v. Schrader Int'l Inc.*,
   432 F. Supp. 3d 448 (D. Del. Jan. 14, 2020) ..................................................... 5, 6

**Statutes**

35 U.S.C. § 102(a) ..................................................................................................... 13

35 U.S.C. § 102(b) ..................................................................................................... 13

35 U.S.C. § 287(a) ..................................................................................................... 15

35 U.S.C. § 315(e)(2) .......................................................................................... 1, 4, 5, 7

37 C.F.R. § 42.104(b)(3) ........................................................................................... 22

37 C.F.R. 1.56(a) ....................................................................................................... 30

37 C.F.R. 1.56(b) ....................................................................................................... 30

**Other Authorities**

*GigaProcessor CEC Book IV Implementation Features* ............................................ 10

## I.      STAGE OF THE PROCEEDINGS AND SUMMARY OF THE ARGUMENT

PACT alleges that certain Intel processors infringe five PACT patents remaining in this case.  Expert discovery closed on June 10, 2022.  D.I. 259.  The parties filed summary judgment and other related expert motions on June 21, 2022. D.I. 270, 273, 275, 278, 281.

Where contested, this Court should deny PACT's Motion for Partial Summary Judgment (D.I. 282 ("Motion")).  Intel does not contest summary judgment regarding covenant not to sue, equitable estoppel, and exhaustion.  However, the remaining bases of PACT's motion are incorrect as a matter of law, or raise genuine disputes of material fact.  Specifically:

1.  Intel is not estopped from asserting invalidity grounds regarding the P6, Power4, TMS, NUMA-Q, and Excalibur systems under 35 U.S.C. § 315(e)(2).

2.  Regarding Intel's Marking defense, Intel has established that embodying products practice the disputed claim terms that PACT raises for the '301 and '047 patents, or at least fact issues preclude summary judgment.

3.  Regarding Intel's inequitable conduct defense, Intel's evidence establishes, under each of its four independent bases, that Mr. Vorbach and his prosecution attorneys misrepresented or omitted information material to patentability with the intent to deceive the United States Patent and Trademark Office, or at a minimum, genuine fact issues preclude summary judgment.

## II.      IPR ESTOPPEL DOES NOT APPLY TO INTEL'S INVALIDITY ARGUMENTS.

PACT cannot meet its burden to show that Intel should be estopped from asserting the prior art products raised in Intel's invalidity arguments.  *See CliniComp Int'l, Inc. v. Athenahealth, Inc.*, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020) ("[T]he moving party bears the burden of showing IPR estoppel").  By statute, IPR estoppel applies only to invalidity "ground[s] that the petitioner raised or reasonably could have raised" during *inter partes* review.  35 U.S.C. § 315(e)(2).  PACT acknowledges that IPR petitioners may not raise invalidity arguments based on

prior art products.  *See* Br. at 4.  Yet ***all*** of the primary references PACT now challenges are prior art products—computer chips made by Intel, Texas Instruments, IBM, Sequent, and Altera that were available before the priority date of the asserted patents.  *See* Resp. Statement of Facts ("RSOF") ¶¶ 114, 127, 136, 142, 148.  Accordingly, estoppel does not apply to Intel's assertions of invalidity based on these chips—whether alone or in combination with other references—because Intel could not have raised these invalidity arguments during the IPR proceedings.  *See Microchip Tech. Inc. v. Aptiv Servs. US LLC*, 2020 WL 4335519, at *4 (D. Del. July 28, 2020).

Despite that straightforward proposition, PACT suggests Intel should be estopped from asserting these products as prior art because PACT claims—without any expert support—that all pertinent technical characteristics of these prior art products are allegedly described in printed publications or patents that PACT contends Intel could have included in an IPR petition.  PACT's argument misapplies a small set of outlier cases where product art was found to be estopped under very narrow circumstances—namely, where the product art's relevant features were ***identical*** to features disclosed in a printed publication or patent that could have been raised in an IPR.  No such circumstances exist here.  Despite PACT's suggestion, Intel is not asserting product art as a cover to rely on printed publications or patents describing those products that Intel could have raised in its IPRs.  Rather, Intel is extensively relying on technical features of the prior art products that were disclosed only in ***non-public*** materials—including confidential technical documents, schematics, presentations, and witness testimony—that indisputably were unavailable for use in the IPRs.  *See* RSOF ¶¶ 114–54.  Far from being "cumulative" of the printed publications and patents that PACT identifies, these additional materials provide key details about each of the products that are necessary to establish invalidity and to rebut PACT's expert's incorrect allegations about the products.  No precedent supports estoppel on these facts.

A.     **Prior Art Products Are Not Subject To IPR Estoppel.**

When considering whether IPR estoppel applies to a prior art reference, courts give "considerable latitude" to invalidity positions based on prior art products or systems.  *See, e.g.*, *Intell. Ventures II LLC v. Kemper Corp.*, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016) (noting defendants have "considerable latitude in using prior art systems (for example, software)," even when those systems "embody[] the same patents or printed publications placed before the PTO in IPR proceedings").  This is, in part, because "[p]roduct prior art invalidates a claim under a different statutory provision than patents or printed publications," which "allow[s] for different evidence and arguments."  *In re Koninklijke Philips Pat. Litig.*, 2020 WL 7392868, at *27 (N.D. Cal. Apr. 13, 2020).  Unlike with patents or printed publications, a defendant "may combine multiple types of evidence—including different written publications, source code, physical samples, engineer testimony, and testing—without performing a motivation to combine analysis." *Id.*  Much of that evidence is, by statute, not allowed in an IPR proceeding—and even if it were, an IPR petitioner could not assert such materials as a single "ground" or reference representing a prior art product.  For example, much like Intel is doing in this case, the defendant in *Koninklijke Philips* "rel[ied] on multiple publications—including [a product] Specification, product guides and manuals, source code, and physical demonstrations—to argue that [prior art] products meet the [asserted] claims[.]"  *Id.*  The court in *Koninklijke Philips* found that the defendant could not have relied on these materials to raise the same invalidity "ground" in its IPR, explaining:

> Had ASUS used the same references in an IPR, some of the evidence would have been unavailable, and ASUS would have had to show motivation to combine for the remaining printed publications.  ***ASUS therefore could not have brought its product prior art invalidity grounds using the same theory, evidence, and arguments in the IPR, and they constitute different "grounds."***  Accordingly, ASUS could not have raised the product prior art grounds in the IPR and is not estopped on that basis.

*Id.*[1]; *see also SPEX Techs. Inc. v. Kingston Tech. Corp.*, 2020 WL 4342254 at *15 (C.D. Cal. June 16, 2020) (rejecting estoppel of device described by "printed publications in an overall collection of documents being used to describe a system invalidity theory").

Based on such reasoning, courts—including this one—have routinely rejected the position that PACT now advances, drawing a clear distinction between invalidity arguments based on product art and those based on printed materials associated with a product. In *Microchip Tech. v. Aptiv Servs.*, for instance, this Court found that IPR estoppel did not apply to product art and rejected the patentee's argument "that the physical devices do not add anything beyond the written references" identified by the patentee. *Microchip Tech.*, 2020 WL 4335519 at *4. Similarly, in *Chemours v. Daiken*, another court in this District recently determined that "[a]s a matter of statutory interpretation, estoppel does not apply to the prior-art products that [the defendant] relie[d] on—*regardless* of whether those products are 'cumulative'" of paper art that the defendant had asserted in its IPR. *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, No. 17-1612 (MN), D.I. 405 (D. Del., July 8, 2022) at 2. The court held that because "courts have interpreted [the term 'ground' in 35 U.S.C. § 315(e)(2)] in the IPR estoppel context to mean the specific pieces of prior art that are the basis or bases on which a competitor challenges a claim,"—and "because a prior art product cannot be used as a reference to challenge the validity of a patent claim in an IPR"—"any invalidity theory relying upon [a] product as a prior art reference is not a 'ground' that reasonably could have been raised during the IPR." *Id.* (quoting *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2020 WL 5512132, at *3 (N.D. Ill. Sept. 14, 2020) (internal quotation marks omitted).

Those cases are equally applicable here. Because Intel is asserting invalidity theories based on prior art products, a ground that Intel could not have raised in an IPR, estoppel cannot

---

[1]     All emphasis is added unless otherwise noted.

apply as a matter of law.  Indeed, not only (as discussed below) does the core evidence include materials that were not available for Intel to use in the IPRs, but Intel could not have submitted those materials in an IPR as evidence illustrating a ***product*** art reference.  Rather, to the extent they were even available, Intel would have been required to raise these materials as individual references themselves, requiring a motivation-to-combine analysis to assert them in combination. As a result, even if Intel could have relied on the same non-public materials as it does now, it could not have relied on the same theories and arguments regarding those materials. Thus, Intel's current invalidity positions constitute separate "grounds" from what Intel could have raised in the IPRs.

Notwithstanding the precedent discussed above—including this Court's decision in *Microchip Tech.*—PACT seeks to rely on an isolated set of cases, including *Wasica Fin. GmbH v. Schrader Int'l Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. Jan. 14, 2020), where courts have estopped defendants from asserting product art only when "the physical product is entirely cumulative" of a printed publication or patent, such that the product art and the paper reference are "materially identical."  Br. at 4.  Notably, in a recent subsequent decision, the court in *Chemours* expressly declined to follow *Wasica*, choosing instead to "align[] with those courts that have adhered more closely to [35 U.S.C. § 315(e)(2)'s] statutory language." *Chemours* at *3.  Regardless, even if this Court were to apply the inquiry undertaken in *Wasica*, the current situation is readily distinguishable.  In *Wasica*, the defendant ***agreed*** that its product art was described, in its entirety, by a single document—a printed publication that the defendant did not dispute could have been raised in an IPR.  *See Wasica*, 432 F. Supp. 3d at 455. On those facts, where there was a complete overlap between the product art and a single printed publication—and the publication stood in for the product art in the defendant's invalidity theory, such that the defendant could have pursued the exact same argument if it had asserted the publication as a paper art reference in the IPR—the

5

*Wasica* court found estoppel.  *See id.*  No such circumstances exist here, where the evidence supporting Intel's product art theory requires multiple different materials, many of which were unavailable for use in an IPR.  Thus, even under PACT's own legal theory based on *Wasica*, no estoppel would apply, and PACT's summary judgment request should be denied.[2]

### B.  Intel's Product Art Theories Rely On Supporting Materials That Were Unavailable For Use In Intel's IPRs And That Contain Information Distinct From The Printed Materials PACT Cites.

Notwithstanding that Intel's present invalidity positions constitute separate legal "grounds" unavailable for assertion in IPRs, PACT asks the Court to find that Intel's evidence demonstrating the cited prior art products is "cumulative" of certain printed publications and patents that PACT maintains were available for Intel to use in the IPRs.  Not only is PACT's argument wrong as a matter of law, it is also wrong on the facts.  To "support" its contention that the prior art products are cumulative of disclosures found in other materials, PACT relies on conclusory tables in which it asserts—without any specific discussion or reliance on expert support—that broad swaths of Intel's evidence duplicate the information in these materials.  *See* PACT SOF ¶¶ 93–98.

PACT is incorrect.  Although the Court need not "dig into the substance" of Intel's evidence to reject PACT's estoppel argument, were it to do so, it would find that the printed publications and patents that PACT identifies do not describe the product art on which Intel relies

---

[2] The other cases on which PACT relies are inapposite, as they resulted in a finding that the asserted product art was not estopped or did not even address the issue of product art at all.  *See Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019) (finding estoppel did not preclude reliance on "Maxx Scoop litter" product); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017) (prior art "physical specimens" not estopped); *Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *10 (N.D. Ill. Mar. 18, 2016), *judgment entered*, 2016 WL 7013478 (N.D. Ill. Nov. 30, 2016) (no estoppel of product art); *California Inst. of Tech*, 2019 WL 8192255, at *8, *order corrected*, 2019 WL 8807924 (C.D. Cal. Nov. 21, 2019, *and aff'd*, 25 F.4th 976 (Fed. Cir. 2022) (addressing art comprised of "paper[s]" and "slide[s]," not product art).

at remotely the same level of technical detail as the evidence that Intel has marshaled regarding these references.[3]  Notably, this evidence includes non-public, confidential technical schematics and related documentation, physical products, and confidential engineer testimony, which Intel's invalidity expert, Dr. Lin, relied on to analyze key limitations of each claim.  *See* RSOF ¶¶ 115–17, 128–30, 137–38, 143–44, 149–51.

As a preliminary matter, PACT has not established—nor can it—that this non-public evidence was available for Intel to raise in its IPR petitions.  As 35 U.S.C. § 315(e)(2) makes clear, there cannot be estoppel unless Intel "reasonably could have raised" the materials during its IPRs—which it could not.  *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-00452-WCB (D. Del. June 15, 2022) at 63 (finding no IPR estoppel where documents relied upon were "non-public and not reasonably available" in IPR); *CliniComp*, 2020 WL 7011768, at *2 (same).

Faced with this significant obstacle to its estoppel argument, PACT offers its conclusory assertion that Intel's non-public evidence is merely cumulative of the public materials PACT cites.  However, as discussed in detail below for each product art reference raised by Intel, Dr. Lin has relied on the non-public evidence to provide critical technical details that are ***missing*** from the public disclosures PACT cites, as well as to rebut PACT's incorrect characterizations of those disclosures.  Unsurprisingly, no court has ever found estoppel under such circumstances.[4]  At a

---

[3] *See Microchip*, 2020 WL 4335519 at *4 (finding "no basis" to disregard physical device references and combinations thereof)

[4] *See, e.g.*, *In re DMF, Inc.*, 858 F. App'x 361, 362 (Fed. Cir. 2021) (affirming no estoppel where accused infringer "was relying on the physical product as a reference for various limitations because the descriptions in the [printed reference] did not disclose all of the . . . product's features"); *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 109063, at *6 (N.D. Cal. Jan. 9, 2020) (no estoppel where "the product itself has functionality that was not reflected in the [publication] used during IPR"); *Star Envirotech, Inc. v. Redline Detection, LLC*, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015) (no estoppel where "the physical machine itself discloses features claimed in the '808 Patent that are not included in the instruction manual").

bare minimum, to the extent this Court even entertains the question of "cumulativeness," a genuine dispute exists regarding whether Intel's non-public evidence discloses information not found in the public materials, and summary judgment on these grounds is not warranted.

> 1. The TI TMS320C80 System Is Not Cumulative Of Balmer And/Or The Master Processor User's Guide.

PACT argues Intel is estopped from asserting Texas Instruments' TMS320C80 product (the "TI TMS") as prior art to the '631, '908, and '047 patents because the TI TMS allegedly is "cumulative" of U.S. Pat. No. 5,197,140 ("Balmer"). *See* Br. at 4–6. For the '631 patent, PACT provides a conclusory mapping that purportedly shows that Balmer discloses the features on which Dr. Lin relies for each claim limitation. *See* PACT SOF ¶ 93. For the '908 and '047 patents, PACT does even less—it merely provides an unexplained table, devoid of expert analysis or other support, that pairs bare citations to Dr. Lin's report with bare citations to Balmer. *See id*. ¶ 94.

Despite PACT's conclusory assertions, the TI TMS is not cumulative of Balmer and/or the Master Processor User's Guide, and Intel could not have raised its theories regarding the TI TMS in an IPR. To describe the TI TMS's functionality, Dr. Lin has relied on multiple pieces of evidence, including whitepapers, data sheets, and user guides, as well as non-public documentation. *See* RSOF ¶ 115. Intel could not have presented this non-public evidence or the same invalidity argument based on this combination of evidence in an IPR.

Critically, the confidential evidence includes crucial, material details about the TI TMS that are unavailable in Balmer or the Master Processor User's Guide. For example, on the '631 patent, although PACT points to Balmer's inclusion of a high-level block diagram similar to one found in the TI TMS documents cited by Dr. Lin (*see* Br. at 5), PACT ignores that Dr. Lin also relies on two confidential Texas Instruments documents produced during discovery that disclose necessary details underlying that high-level diagram, which are not present in Balmer. *See* RSOF

¶ 116.  Dr. Lin has also relied on non-public evidence to rebut alleged deficiencies that PACT's expert, Dr. Reinman, purported to identify in the public documents.  For instance, Dr. Reinman cited a TI TMS user manual to argue that the TI TMS does not disclose the "plurality of flexible data channels" recited in claim 1 of the '631 patent, because the product's bus segments supposedly cannot communicate "at the same time."  RSOF ¶ 119.   In response, Dr. Lin pointed out that Dr. Reinman's understanding is contradicted by a confidential TI TMS technical specification titled "PPEs and their environment," which was produced during this litigation and which clarifies that the bus segments communicate ███████████ *Id.*; *see also id.* ¶¶ 120–22 (identifying other technical details put at issue by PACT's expert and requiring confidential materials for rebuttal).

Balmer likewise is silent regarding several key features on which Dr. Lin relies for his opinion regarding the '908 patent.  For example, claim 4 of the '908 patent requires "at least some of the plurality of processors, the at least one interface, and the at least one separated cache having a module identification (ID)." ████████████████████████ ████████████████████████████████ *See* RSOF ¶¶ 123–24.  PACT does not contend that Balmer discloses a ████████"— and indeed it does not.  *See id.*

The TI TMS is not cumulative of Balmer's disclosure with respect to the '047 patent either.  For instance, claim 4 of the '047 patent requires that "the voltage supply is adapted to supply higher supply voltages for data processing at higher clock frequencies."  For this limitation, Dr. Lin relies on disclosures in TI TMS documents that set forth ████████████████████ ████████████████████."  RSOF ¶ 126.  In contrast, Balmer does not discuss voltage levels at all, which PACT acknowledges when it asserts that Balmer's disclosure "*implicitly* requires a voltage supply."  PACT SOF ¶ 94.

Although PACT further suggests that estoppel can apply if the relevant features are

disclosed in a "combination" of printed publications, such as Balmer considered in combination with Texas Instruments' Master Processor User's Guide, *see* Br. at 5, the Master Processor User's Guide does not disclose the features that are missing from Balmer. *See* RSOF ¶ 126. Moreover, as noted above, combining two or more references in an IPR would have required a theory of obviousness supported by a motivation to combine, which is a distinct "ground" from Intel's position that the claims are invalidated by a single product art reference (the TI TMS). Estoppel therefore could not apply. *See In re Koninklijke Philips Pat. Litig.*, 2020 WL 7392868, at *27.

2.      IBM's Power4 System Is Not Cumulative Of The Power4 Redbook.

PACT asserts that IBM's Power4 product "is cumulative to the Power4 Redbook," a user guide that describes the Power4 system's functionality at a high level, contending that the Power4 Redbook discloses every relevant alleged feature of the Power4 system for claim 4 of the '631 patent and claim 5 of the '908 patent. Br. At 6.[5]  Again, however, PACT ignores that Dr. Lin's opinions here rely extensively on non-public IBM documents and witness testimony absent from the Power4 Redbook and any other public document.  For example, for the '631 patent, Dr. Lin opined that the Power4's CIU bus segments constitute the claims' recited "plurality of bus segments for each processor of the multiprocessor system comprising a plurality of flexible data channels," under PACT's interpretation of this limitation. *See* RSOF ¶ 131.  In so opining, Dr. Lin relied on confidential deposition testimony from IBM engineer Derek Williams and disclosures from *GigaProcessor CEC Book IV Implementation Features* ("*Book IV*"), a confidential IBM document—both of which illustrate the Power4 system's bus segments and flexible data channels with more specificity than the Power4 Redbook. *See id.*  Dr. Lin likewise

---

[5] Notably, PACT does not even attempt to map the Power4 Redbook to asserted claim 5 of the '908 in its statement of facts.  Instead, PACT vaguely cites "¶¶ 703–763" of Dr. Lin's opening report as being comparable to pages "1–51" of the Power4 Redbook. *See* Br. at 6.

relied on confidential materials to opine that the Power4 product practices other asserted claims of these patents. *See id.* ¶¶ 132–33.

Dr. Lin also relied on these confidential materials to rebut PACT's validity arguments—including the opinion of PACT's expert, Dr. Reinman, based primarily on the Power4 Redbook, that the Power4 does not include the claimed "plurality of bus segments." *See* RSOF ¶ 131. Dr. Lin similarly relied on confidential information from *Book IV* that is not included in the Power4 Redbook to explain how the Power4 practices the '908 patent's "module identification" functionality and to rebut Dr. Reinman's opinion, as well as confidential deposition testimony from Mr. Williams to identify ██████████████████ that are not disclosed in the Power4 Redbook. *See* RSOF ¶¶ 134–35.

### 3. The Intel P6 System With Orion Is Not Cumulative Of The Pentium Pro Developer's Manual.

Intel contends that the '631 and '908 patents are invalidated by Intel's prior art P6 System with the Orion Chipset (the "P6 System with Orion"), a system that comprises four P6 processor chips combined with an Orion PCI Bridge and an Orion Memory Controller. *See* RSOF ¶ 136. PACT incorrectly contends that "all of the relevant features of the P6 System" are disclosed in two volumes of a publicly-available Pentium Pro "Developer's Manual." Br. at 7–8.

As an initial matter, the Pentium Pro manuals describe only the single Pentium Pro microprocessor, not the four-processor P6 System with Orion on which Intel relies. *See* RSOF ¶ 139. The '631 and '908 patents' asserted claims require multiple processors connected to a "bus system." Intel developed the Orion chipset—including the Orion PCI Bridge and Orion Memory Controller—as a "building block" to facilitate the creation of a multiprocessor system using the P6 processor. *See id.* The manuals do not describe the complete system sold by Intel that included the Orion chipset nor even mention the term "Orion." *See id.* Significantly, Intel relies on the

Orion chipset components to satisfy key claim limitations.  *See id.*

The Pentium Pro manuals also do not disclose all relevant features of the claimed individual "processor[s]," and Dr. Lin's opinion regarding the P6 System relies almost entirely on confidential, non-public Intel documents.  *See id.* ¶¶ 137–41.   For example, the Pentium Pro manuals do not describe how a P6 processor accesses the bus segments Dr. Lin relies on for claim 1 of the '631 Patent.  *See id.* ¶ 140.   Further, to show that the P6 System with Orion satisfies the "interconnect system" limitation of claim 4 of the '908, Dr. Lin relied on confidential, internal Intel documents that indicate that ███████████████████████████████████ ███████████████████████████████."  *Id.* ¶ 141.  Although PACT notes that the manuals include a passing reference to "clusters," *see* Br. at 8, PACT ignores that the manuals disclose neither the "████████" nor the ████████" features.

4.   The Sequent NUMA-Q Is Not Cumulative Of Safranek And/Or The P6 Manuals Vols. 1–2.

PACT contends that Intel is estopped from asserting the Sequent NUMA-Q product as prior art because it allegedly is "cumulative to the combination of Safranek and the P6 Manuals Vols. 1–2."  Br. at 9.  The NUMA-Q product consists, in part, of the P6 System with Orion.  *See* RSOF ¶ 142.  As discussed above, contrary to PACT's conclusory assertion of cumulativeness, Br. at 8, Dr. Lin relied on confidential documents that provide technical details not found in the P6 manuals to arrive at his opinions.  *See* § II.B.3, *supra*.  PACT's estoppel argument regarding the NUMA-Q product therefore fails for the same reasons as its argument regarding the P6 System.

PACT also asserts that "Safranek alone discloses each and every feature unique to Numa-Q (beyond the P6 System)[.]"  Br. at 8–9.  This is also incorrect—for example, regarding the '631 patent's limitation requiring "a communication…in accordance with a data transfer for an executed algorithm" and the '908 patent's "arbiter" and "chronological sequence" limitations, Dr. Lin relied

on the confidential deposition testimony of former Sequent engineer Keith Brown, who provided key technical details not disclosed in Safranek.  *See* RSOF ¶¶ 142, 144.

> 5.   The Altera Excalibur Is Not Cumulative Of The Manuals, Datasheets, And Product Notes Cited By PACT.

PACT likewise argues that Intel is estopped from asserting Altera's Excalibur product as prior art (either alone or in combination with other references that are prior art to the '301 patent), because the Excalibur system allegedly is cumulative of four publications.  *See* Br. at 9–10.  PACT's argument again ignores Dr. Lin's reliance on critical information regarding Excalibur that was not disclosed in the four documents PACT cites, including information from whitepapers, application notes, user guides, and non-public, confidential documents that Intel could not have raised in an IPR.  *See* RSOF ¶¶ 148–51.[6]  For example, Dr. Lin relied on confidential information to demonstrate that Excalibur discloses "disabling a clock of at least some data processing elements at runtime," in claims 14 and 17 of the '301 patent.  *See* RSOF ¶ 152.  Dr. Lin similarly relied on confidential materials to describe the Excalibur device's "low power modes," providing key details of how multiple cores can ███████████████ that are not included in the material cited by PACT.  *See* RSOF ¶ 153.  Dr. Lin likewise relied almost exclusively on confidential materials to show that Excalibur meets the '301 patent's limitations requiring "an arrangement for individually defining a power supply" and "a power supply voltage," and that the processor is "adapted for reducing the clock frequencies."  *See* RSOF ¶ 154.

## III.   INTEL HAS OFFERED EVIDENCE RAISING A GENUINE DISPUTE THAT THE LICENSEE PRODUCTS PRACTICE THE '047 AND '301 PATENTS.

Throughout his opening, rebuttal, and reply expert reports, Intel's expert  Dr. Mowry

---

[6] Moreover, Dr. Lin relied on certain publications that were not available for use in an IPR because they were not published until after the '301 patent's priority date.  *See* RSOF ¶ 151; 35 U.S.C. §§ 102(a)–(b).

presented substantial evidence that PACT and its licensees failed to mark numerous products that practice the asserted patents.  RSOF ¶¶40–43, 59, 155–163.  PACT nevertheless seeks summary judgment on the issue of marking with respect to two asserted patents, based on a newly offered interpretation of the "adapted to"/"adapted for" language found in the '047 patent's asserted claims and claim 8 of the '301 patent.  PACT argues that Dr. Mowry failed to opine that the Licensee Products practice those claims under PACT's newly revealed construction of this language.

Despite PACT's attempted ambush of a previously undisclosed claim interpretation, PACT has not met its burden to show that there is no genuine issue of fact concerning the Licensee Products' use of the '047 and '301 patents.  *First,* regarding the '047 patent, Dr. Mowry *did* expressly offer opinions and evidence that the Licensee Products are "adapted to" practice the functions recited in claims 1 and 4 of the '047 patent—including under PACT's belated interpretation of this term.  *Second,* regarding the '301 patent, even if the Court accepts PACT's argument that Dr. Mowry has not adequately opined that the Licensee Products satisfy PACT's new interpretation of the "adapted for" limitation, a marking defense requires only that the Licensee Products practice *any* apparatus claim found in the '301 patent.  PACT's motion ignores that Dr. Mowry presented evidence and opinions that raise a material dispute regarding the '301 patent's *other* asserted apparatus claims, which do not include the "adapted for" limitation.  *Third,* while the preceding two deficiencies in PACT's arguments are sufficient to defeat its motion with respect to marking on both patents, PACT's argument fails for an additional reason: the interpretation PACT now purports to reject is the *same* interpretation that its own expert applied for purposes of his infringement analysis.  PACT cannot interpret the same claims one way to try to show infringement and a different way in opposing Intel's marking defense.  Ultimately, because there are—at a minimum—genuine issues of fact regarding whether the Licensee Products

practice the '047 and '301 patents, PACT's summary judgment request should be rejected.

PACT bears the burden of pleading and demonstrating compliance with 35 U.S.C. § 287(a)'s marking requirement.  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  Compliance with § 287(a) is a question of fact.  *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  A marking defense may be based on the patentee's (or its licensees') failure to mark products that practice ***any*** apparatus claim of the patent-in-suit.  *See, e.g.*, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1382 (Fed. Cir. 2017) (finding patentee did not "avoid the marking requirement" by disclaiming apparatus claim practiced by unmarked products); *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *2 (E.D. Tex. Apr. 18, 2019) (noting marking requirement applies to product that practices even a single apparatus claim).

### A.     PACT Mischaracterizes Dr. Mowry's Opinions Regarding The '047 Patent.

PACT's request for summary judgment regarding the '047 patent is premised on the incorrect assertion that "Dr. Mowry does not contend that the Licensee Products' voltage supplies ***are*** 'adapted to' practice the claim limitation."  Br. at 14.  PACT offers—for the first time in this case—an interpretation of the '047 patent's "adapted to" language as requiring "a voltage supply that ***is*** adapted to provide higher supply voltages at higher clock frequencies, not merely a voltage supply that ***can*** be adapted to practice the limitation," and PACT contends Dr. Mowry opined only that the Licensee Products satisfy the '047 patent's claims because they ***can*** be so adapted, not because they are so ***adapted***, as presently configured.  *Id.* at 12.

Contrary to PACT's misrepresentation, Dr. Mowry did offer opinions and present evidence that the Licensee Products are presently adapted to provide higher supply voltages at higher clock frequencies.  Dr. Mowry observed, for example, that the "documentation explains that the Zynq-7000 [Licensee Product] ***has*** dynamic clock frequency and voltage adjustments in which the

voltage supply *is adapted* to supply higher voltages for data processing operating at higher clock frequencies."   RSOF ¶¶ 42, 158.  Dr. Mowry expressly identified a voltage-controlled oscillator ("VCO") as the means by which the Zynq-7000 is adapted to carry out this function, explaining that "[w]hen the VCO operates at too low of a frequency, an up signal will increase the voltage." *Id.*  Dr. Mowry similarly explained that the Zynq Ultrascale+ Licensee Product contains multiple "power domains," including "the Full-power domain," which interacts with the product's "5 PLLs for dynamic clock frequency adjustment" to supply higher supply voltages for data processing at higher clock frequencies. RSOF ¶ 159. He likewise explained that the Microsemi SmartFusion Licensee Product is "adapted to supply higher supply voltages for data processing at higher clock frequencies" because (among other relevant features) the product includes "various I/Os besides global I/Os" that operate in conjunction with a "high performance" state to "separately adjust[] clock frequencies for the bus and various data processing units (logic units)"—*i.e.*, to supply higher supply voltages for data processing at higher clock frequencies.   RSOF ¶ 160.  These opinions and the supporting evidence that Dr. Mowry cites—which PACT conspicuously fails to mention in its motion—are fatal to PACT's argument.

PACT also incorrectly asserts that Dr. Mowry "provides no rebuttal to Dr. Conte's opinions regarding this claim limitation." Br. at 15.  Far from conceding or failing to respond to Dr. Conte's arguments, Dr. Mowry expressly rejected and provided substantive technical opinions to rebut all of Dr. Conte's positions, including for the "adapted to" limitation.  *See, e.g.*, RSOF ¶ 161.

Even a cursory review of Dr. Mowry's reports disproves PACT's central contention that he failed to opine that the Licensee Products are "adapted," *as configured*, to supply higher voltages for data processing at higher clock frequencies.  While Dr. Mowry and Dr. Conte may disagree over whether the Licensee Products perform this function, factual disputes regarding the

16

products' functionality are a classic "battle of the experts," precluding summary judgment.  *See, e.g.*, *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 921 (Fed. Cir. 2004) ("With respect to both of these limitations there seems to be a classic 'battle of the experts' which renders summary judgment improper."); *Leader Techs., Inc. v. Facebook, Inc.*, No. 08–862–LPS, 2011 WL 1514701, at *2 (D. Del. Mar. 14, 2011) (same).

### B.    PACT Concedes A Genuine Dispute Regarding The '301 Patent By Failing To Address Multiple Claims That Dr. Mowry Included In His Marking Analysis.

PACT's summary judgment request regarding the '301 patent is premised on the incorrect assertion that "Dr. Mowry *only alleges* that the Licensee Products practice claim 8 of the '301 patent."  Br. at 11.  In fact, Dr. Mowry provided a detailed analysis of how the Licensee Products satisfy *every* asserted claim of the '301 patent, including claims 14 and 17.  *See* RSOF ¶¶ 39, 162–63.  While PACT argues that Dr. Mowry's analysis of claim 8 applied an incorrect construction of the limitation "adapted for reducing clock frequencies … in response to a determination that a power reserve of a battery is below a predetermined threshold", PACT fails to acknowledge, let alone substantively address, Dr. Mowry's analyses of claims 14 and 17—*neither* of which include the "adapted for" limitation that PACT contends Dr. Mowry misinterpreted.  *See* Br. at 10–16; RSOF ¶¶ 57, 163–64.  As noted above, a marking defense may be based on products that practice *any* apparatus claim found in the patent-in-suit.  *See, e.g.*, *Intell. Ventures II*, 2019 WL 2959568, at *2.  Hence, even assuming for the sake of argument that Dr. Mowry misinterpreted the "adapted for" limitation in his analysis of claim 8, a marking defense regarding the '301 patent may still be supported based on his analyses of claims 14 and 17—*the sufficiency of which PACT does not dispute*.  As a result, summary judgment is not appropriate on this patent, either.

### C.    PACT's Infringement Analysis Applies The Interpretation It Now Criticizes.

As the previous two sections illustrate, even if the Court accepts PACT's current

interpretation of the "adapted to/for" language as requiring that the products are ***presently*** adapted to perform the recited functions (as opposed to merely being adaptable to perform them), PACT cannot meet its burden to show summary judgment is warranted. Even putting that aside, summary judgment is also inappropriate because the claim interpretation on which PACT bases its request contradicts the position PACT has taken for purposes of its infringement analysis. RSOF ¶ 57,162.

PACT's expert, Dr. Conte, opined that for the accused Intel products to practice any asserted system claim (including the claims containing the "adapted to/for" limitations), the products need only be ***capable*** of being adapted to perform the recited functions. RSOF ¶¶ 166–68. The facts regarding Intel's accused products motivated Dr. Conte to take this position. For example, like several of the Licensee Products, the accused Intel processors lack the batteries and power supplies required by the claims, and therefore are not presently adapted, as sold, to "reduc[e] clock frequencies . . . in response to a determination that a power reserve of a battery is below a predetermined threshold," as the '301 patent requires. *See* RSOF ¶ 169. Indeed, Dr. Conte could not identify any evidence that Intel's processors are themselves configured to reduce frequency in response to low battery reserves, but merely noted for select architectures that a computer's operating system provides "hints" to the processor "to affect the operating point of the power management," and identified a single Figure (of a desktop) that "shows a battery with a percentage on it" related to the associated "hints." *See* RSOF ¶ 171. Critically, that fact does not indicate that an Intel processor, as sold, meets the recited functionality; at best, it establishes that if the processor is used in conjunction with a separate computer system and operating system (not provided by Intel), the processor's power management system may receive "hints" from an operating system, if the operating system has been appropriately configured. *See* RSOF ¶¶ 170–71. This interpretation by Dr. Conte of the "adapted to/for" limitations flies in the face of PACT's present

contention that these claim terms "should be given the narrower meaning of 'made to' or 'configured to,' *not merely 'capable of.'*" Mot. at 12. Instead, Dr. Conte's interpretation is synonymous with the alternative interpretation that Dr. Mowry applied to opine that Licensee Products practice claim 8 of the '301 patent. *See* RSOF ¶¶ 162, 170–71.

PACT cannot have it both ways—it may not seek summary judgment on the issue of marking by rejecting the same claim interpretation on which its own infringement expert relies. *See, e.g.*, *California Inst. of Tech. v. Broadcom Ltd.*, 2019 WL 8807924, at *9 (C.D. Cal. Nov. 21, 2019) (finding genuine dispute of fact because "so long as Plaintiff is permitted to maintain its [interpretation of the claims for infringement], Defendants should also be permitted to alternatively argue that, accepting Plaintiff's position as true, Plaintiff had a duty to mark a commercial product with the asserted patent numbers."); *Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*, 370 F.3d 1354, 1364 (Fed. Cir. 2004) (refusing to apply different claim constructions for damages. versus infringement). For this reason, the Court should also reject PACT's argument that there is no genuine dispute regarding claim 8 of the '301 patent. Moreover, to the extent the Court finds some deficiency in Dr. Mowry's disclosures of how the Licensee Products practice the '047 patent's claims under PACT's present claim interpretation, Dr. Mowry's opinions undeniably raise a genuine dispute under the interpretation that PACT adopted to try to show infringement. PACT's summary judgment request therefore should be denied on these grounds.

## IV.    INTEL DOES NOT OPPOSE SUMMARY JUDGMENT OF ITS FIFTH-TO-SEVENTH AFFIRMATIVE DEFENSES OR FIRST COUNTERCLAIM

Intel does not oppose summary judgment regarding its Seventh (No Infringement Due to Covenant Not to Sue), Fifth (Exhaustion), and Sixth (Equitable Estoppel) Affirmative Defenses, or First Counterclaim (Breach of Contract). PACT did not meet and confer with Intel before filing its Motion. Otherwise, Intel would have told PACT it did not need to move on those issues.

V.   **GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON INTEL'S INEQUITABLE-CONDUCT DEFENSE**

PACT's motion for summary judgment on Intel's inequitable conduct-defense should be denied.  PACT has failed to demonstrate the absence of a genuine issue of material fact as to any of Intel's multiple bases of inequitable conduct.  To the contrary, many factual disputes exist as to whether Mr. Vorbach and PACT's prosecuting attorneys buried material prior art in information disclosure statements ("IDSs") with an intent to deceive the USPTO, intentionally withheld altogether other material information bearing on the invalidity of the patents, and intentionally submitted false inventorship declarations to secure issuance of the patents.

A.   **Fact Issues Preclude Summary Judgment Regarding PACT's "Burying" Of The TMS320C80 References.**

PACT first asks the Court to grant summary judgment on Intel's inequitable-conduct defense based on PACT's burying of the TMS References, a collection of manuals and system synopses describing a Texas Instruments "parallel processor."  But Intel has adduced ample evidence that precludes summary judgment on this issue.  Intel's evidence shows  that PACT CEO Martin Vorbach and PACT prosecuting attorneys Mr. Grunberger and Mr. Heller buried the existence of the material TMS References from the patent examiners in voluminous IDSs with more than 1,000 listed documents during prosecution of the '593, '908, '631, and '047 patents, even after examiners told them that it was improper to submit massive amounts of clearly irrelevant information to the USPTO during prosecution.  This burying was done with the intent of hiding the TMS References from the Examiners, since consideration of these references would have resulted in rejection of the patents.  PACT raises three arguments as to why it is purportedly entitled to summary judgment on this issue, Motion at 22–25, but each argument fails.

1.   **"Burying" material prior art in voluminous IDSs is a legally cognizable inequitable-conduct theory.**

First, PACT incorrectly argues that "burying" is not a permissible basis of inequitable conduct "as a matter of law," and that the Federal Circuit case *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000) "bars an inequitable conduct claim based on a 'burying' theory." Motion at 22–23.   But PACT already made, and ***the Court already rejected, this exact same argument***.   When Intel moved to amend its Answer to add an inequitable conduct defense (D.I. 103), PACT opposed, making exactly the same argument that is makes here.   D.I. 108 at 7–8 (citing same cases as PACT's present Motion).   But this Court granted Intel's motion, expressly finding that burying of material prior art is a legally permissible basis of inequitable conduct under Federal Circuit law: "The Federal Circuit has recognized ***burying as a cognizable claim in Molins***.   *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995).   And ***nothing in Fiskars*** suggests the Federal Circuit overturned that precedent."   D.I. 151 at 3 (Granting Mot. to Amend) (emphasis added).

In disregarding the Court's ruling on this issue, PACT predominantly re-cites (Motion at 23) case law it previously raised when opposing Intel's motion to amend, citing only two additional cases. But neither overturns the Federal Circuit's *Molins* decision cited by this Court.   Motion at 22 (citing 1991 Federal Circuit *Scripps* case) and 23 (citing *Seaboard* (E.D. Cal. case where motion to dismiss was granted where defendant "fail[ed] to allege 'who' buried [references] and 'why/how' the references are material.").

### 2.   Intel has marshalled evidence establishing that the buried TMS320C80 References were but-for material to patentability.

Second, PACT argues that Intel "cannot establish" that the buried TMS References were material to patentability.   Motion at 23–24.   But the opinions and analysis of Intel's technical expert Dr. Lin establish at a minimum a disputed issue of material fact on this issue.   In his opening expert report, Dr. Lin analyzes the materiality of the TMS References as to the four patents where burying occurred, showing that the TMS References anticipate or render obvious the asserted

claims of the '593, '908, '631, and '047 patents.  Lin Report Section 21 (citing §§ 13.3, 16.3, 16.8,

16.9 ('593 Pat.), 15.4, 15.13–14 ('908 Pat.), 14.4 ('631 Pat.), 18.1–18.5 ('047 Pat.).  As such,

Intel's evidence shows that the TMS References meet the Federal Circuit's but-for materiality

standard, since the Examiners would have rejected the claims had they applied them to the claims

during prosecution.  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290–92 (Fed.

Cir. 2011).  PACT nevertheless disputes materiality.

For the '593 patent, PACT argues that the TMS References are not but-for material

"because the TMS320C80 system described by these references" is purportedly cumulative to U.S.

Patent No. 5,197,140 ("Balmer"), which was considered by the PTAB in denying Intel's petition

for *inter partes* review of the '593 patent.  Motion at 24 (citing SoF ¶ 23).  But as explained in

detail above in Section III, the TMS320C80 system *is not cumulative of Balmer*.  Indeed, the

TMS3 References are dated 6–8 years after Balmer, and contain more than 100 additional pages

of disclosures compared to Balmer's 70 pages of disclosure.  *See, e.g.*, Ex. 27. (TMS data sheet).[7]

For the '908, '631, and '047 patents, PACT argues that the TMS References are not but-

for material because Intel did not include the Balmer reference in its IPR petitions against those

patents.  Motion at 24.  PACT argues, with no citation to evidence, that this "shows that even Intel

did not believe" that Balmer would invalidate these patents.  But Intel was not required to file any

IPR petitions (which have strict length limitations) against these patents, let alone required to file

petitions with *all* invalidating prior art.  PACT's attorney argument is not evidence at all, and does

---

[7]  Additionally, standards applied in IPRs are different from the standard that an examiner would apply during prosecution of a patent application.  For example, in IPRs claims are construed per the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *see* 37 C.F.R. § 42.104(b)(3).  In contrast, patent applications are examined based on broadest reasonable construction.  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291–92 (Fed. Cir. 2011).  Thus, the fact that Intel's IPR petition was denied does not bear on how a patent examiner would have viewed any particular references during prosecution.

not undermine in any way Intel's evidence that the TMS References are but-for material to the '908, '631,'047, and '593 patents.  And even if PACT's attorney argument were evidence, at a minimum it raises a disputed issue of fact that precludes summary judgment.

### 3.  Intel's evidence shows that Messrs. Vorbach, Grunberger, and Heller intended to deceive the PTO.

Third, PACT argues that Intel "cannot establish" intent to deceive the PTO.  Motion at 25. But Intel has adduced ample evidence that at a minimum raises triable issues of fact as to whether intent to hide the TMS References from the USPTO is the single most reasonable inference that can be drawn from PACT's repeated submissions of multiple voluminous IDS statements to the USPTO during prosecution of the '593, '908, '631, and '047 patents, when all surrounding circumstances ignored by PACT in its brief are taken into account.  Indeed, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence" *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Further, evaluating the alleged reasonableness of PACT's excuses requires an assessing the credibility of Mr. Grunberger's testimony, upon which PACT relies, which is inappropriate at the summary judgment stage.

Viewed in the light most favorable to Intel, the facts adduced by Intel show that Mr. Vorbach and his prosecuting attorneys knew of the materiality of the TMS References, and deliberately hid those references from the USPTO by burying them in voluminous IDSs among hundreds of irrelevant documents.  For example, the evidence shows that PACT's patent broker, a company called Inflexion, identified the TMS320C80 system to Mr. Vorbach in July 2009; that as of October 2009 Mr. Vorbach had the TMS References on his computer in three folders called "New Processor Claims/Prior Art"; in one folder there was no other prior art, in the other folders there were only two and ten files total; that Mr. Vorbach emailed the TMS References to Mr.

Grunberger in February and June, 2010; that the TMS References were listed in lengthy and numerous IDSs during prosecution of the '593, '908, '631, and '047 patents among marginally relevant material,[8] including materials from litigation of unrelated patents;[9] that IDSs identified the TMS References as "information that arose in" the Xilinx-PACT litigation even though Mr. Vorbach was independently aware of them and made his own determination as to their importance; that despite having been identified by Inflexion to Mr. Vorbach and despite being having been specifically provided by Mr. Vorbach to his counsel, no effort was made by Mr. Vorbach or his attorneys to bring the USPTO's attention to the TMS References despite their recognized importance; and that before prosecution of the asserted patents, PACT was repeatedly warned by Examiners that submitting long lists of prior art with key references buried among minimally relevant information was improper. USPTO examiners objected to "extremely voluminous prior art citation" by PACT, "invited [Applicants] to provide comments regarding the most relevant pieces of prior art," and stated that review of each reference had been "cursory." Yet, PACT never changed its practice of submitting voluminous IDSs and marginally relevant information in the face of USPTO warnings. RSUF 181–193, 201, 208–221, 240–296, 299–300, 172–175. These facts, taken together, raise fact issues as to the intent of Mr. Vorbach and his attorneys.

---

[8] For example, PACT submitted: attorney sign-in sheets; exhibits to claim construction briefing; Markman Hearing minutes; *Markman* depositions; Order allowing amended joint claim construction statement; joint claim construction statements; list of terms for construction; claim construction charts; lists of extrinsic evidence; claim construction opening, responsive and reply briefs; amended claim construction statements; expert reports regarding *Markman*; declarations regarding claim construction; expert deposition transcripts. and invalidity contentions. RSUF 299.

[9] PACT attempts to justify the submission of documents identified above from the patent litigation involving PACT and Xilinx, PACT XPP Techs., A.G. v. XILINX, Inc., No. 2:07cv563 (E.D. Tex. Dec. 28, 2007), yet not a single asserted patent in the Xilinx case is in the same family of any of the patents asserted here, and the Xilinx case involved FPGAs, not processors. RSUF 300–01.

PACT attempts to justify the improper behavior of Messrs. Vorbach, Grunberger, and Heller ("VGH") as "trying to err on the side of disclosure" (Motion at 25, with no citation to evidence), but this argument at best raises an issue of fact as to intent.[10]  While PACT cites the MPEP's suggestion that "[w]hen in doubt, it is desirable and safest to submit information" (Motion at 25), PACT cites no contemporaneous evidence that VGH were following this suggestion when they submitted the IDSs.  Moreover, the MPEP *also* states that applicants should avoid submitting long IDSs if it can be avoided, should eliminate clearly irrelevant and marginally pertinent cumulative information, and highlight references known to be most significant.  RSUF 303–304. PACT clearly did not follow this guidance, listing over 1000 documents on the IDSs in some cases and never highlighting the TMS References.  While PACT also cites the experts' testimony that, *in general*, practitioners commonly err on the side of caution and submit more information in IDSs rather than less (Motion at 25), no evidence exists that VGH's process of submitting voluminous IDSs filled with irrelevant information was common at all.  To the contrary, the evidence indicates that PACT buried the TMS References by design.[11]  Indeed, the evidence shows that Mr. Vorbach had the TMS References in "prior art" folders on his computer, knew they were material, sent the references to his prosecution counsel, and the yet references were buried among hundreds or over 1,000 references for USPTO Examiners who spent approximately 19–21 hours reviewing patent

---

[10]  *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*, 2021 WL 982728, at *5 (D. Del. Mar. 16, 2021) (denying summary judgment because "[t]here are disputes of material fact as to whether Plaintiff had specific intent to deceive and the determination of intent is 'inherently factual.'"); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 575 (D. Del. 2019) (denying summary judgment because "there is a material dispute of fact on deceptive intent; Defendants have put forward affirmative circumstantial evidence of intent to deceive"); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1351–52 (Fed. Cir. 2013) (vacating summary judgment).

[11]  PACT cites *Esco Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1062–63 (D. Nev. 2016) attempting to absolve VGH's conduct, but in *Esco*, the burying allegation was supported solely by prior art being submitted among a 945 page IDS, with no additional facts supporting burying.

applications, start-to-finish (Ex. 47 (Godici Dep. at 65–67)), all in the face of USPTO warnings

that such conduct was improper and would not result in fair consideration of submitted materials.

### B. Fact Issues Preclude Summary Judgment Based On Mr. Vorbach's False Inventorship Declarations.

PACT also argues that it is entitled to summary judgment on Intel's inequitable-conduct

defense based on Mr. Vorbach's knowingly false inventorship declarations.  But Intel's evidence

at a minimum raises fact issues whether Mr. Vorbach and his attorneys knowingly submitted false

declarations during prosecution of each asserted patent in order to secure issuance of the patents.

<u>**Mr. Vorbach**</u>:  For example, before drafting the asserted claims, Mr. Vorbach



RSUF 176–180; Ex. 21. Yet, for each of the asserted

patents, Mr. Vorbach submitted through his patent attorneys an inventor declaration swearing to

be the original inventor of patent claims that he now asserts do in fact cover Intel's products (RSUF

228–296), despite the fact that

. and Intel's other evidence is more than sufficient to raise a triable

issue of fact.[12]  In addition, for the '908 and '047 patents, Mr. Vorbach submitted a Substitute

Statement for an Oath or Declaration from the other inventors, representing that despite diligent

efforts, the other inventors (including Volker Baumgarte) could not be found or reached to sign an

inventor's oath; yet each of the named inventors agreed in their assignments to PACT to execute

---

[12]  Mr. Vorbach refused to answer questions during his deposition regarding prosecution of the asserted patents and the scope of the asserted claims, including whether he looked at Intel documents in deciding how to write those claims.  RSUF 194–195, 200.

and deliver to PACT all application documents, including oaths, as may be requested by PACT. Mr. Vorbach submitted the sworn Substitute Statements despite ***admittedly not knowing*** what, if anything, the other named inventors contributed toward any claimed invention. RSUF 203–204. Mr. Vorbach's substitute oath was false, as he had no basis to attest to his assertions.

PACT's response to this evidence merely raises factual disputes.  PACT argues that it disagrees with Intel's ███████████████████████ and that Intel "relies on quotes out of context," that Intel's cited evidence "shows that Mr. Vorbach believed" that he was an inventor, and that "Intel's selective quotes do not consider the context and the other evidence in this case." Motion at 26–27.  But PACT's efforts to recharacterize ████████████████████████ ████████████████ is a classic fact dispute precluding summary judgment.[13]  *Sysmex Corp. v. Beckman Coulter, Inc.*, 2022 WL 1503987, at *7 (D. Del. May 6, 2022, *R&R adopted*, 2022 WL 1744573 (D. Del. May 31, 2022) ("with BCI pointing to evidence that could enable a contrary reasonable inference of knowledge and deceptive intent, material disputed issues of fact remain").

PACT also selectively cites to Mr. Vorbach's deposition testimony from 2021 █████████ ████████████████████████████████████████████████████ Motion at 27. But PACT omits brief that Mr. Vorbach was also deposed in 2020, █████████████████████ ████████████████████████ ███████████████████ highlights the factual dispute and raises credibility issues precluding summary judgment.  RSUF 205–206.

PACT also claims that it is "undisputed" that Mr. Vorbach relied on PACT's patent counsel, Peter Pietruk (who did not prosecute the asserted patents) to make determinations on inventorship.  Motion at 26.  But there is no record evidence to support this assertion, and even if

---

[13]  In recharacterizing the written record, PACT's Motion tellingly switches between referring to "processor based inventions in the relevant applications," "sequential processors," and "general purpose processors" without actually quoting the documentary evidence.  Motion at 26–28.

there were it only highlights the existence of a factual dispute that precludes summary judgment. The only evidence PACT identifies in its Motion on this point is its SoF ¶ 106 (Mot. at 29), citing Mr. Grunberger testimony that he "recently" interacts with just Peter, but "used to have communications with Martin [Vorbach] . . . ." But the surrounding testimony, not cited by PACT, shows that Mr. Grunberger was referring to communications occurring "fairly recently" relating to present prosecution matters. Ex. 37 (Grunberger Dep. 23:16–24:6). PACT cites no evidence that Mr. Vorbach relied on Mr. Pietruk to determine inventorship back in 209–2014. Indeed, Mr. Pietruk is not even identified in PACT's response to Intel's Interrogatory No. 5, which required PACT to identify all persons with knowledge of inventorship. RSUF 207.[14]

**Mr. Grunberger and Mr. Heller**:  With regard to Mr. Grunberger's and Mr. Heller's submission of Mr. Vorbach's false declarations to the USPTO, PACT argues that Intel's defense "fails as a matter of law." But Intel's evidence at a minimum raises a triable issue of fact as to whether Messrs. Grunberger and Heller knowingly filed Mr. Vorbach's false oaths. For example, Intel's evidence shows that the USPTO does not investigate inventorship and relies instead on the duty of candor; a reasonable inquiry into inventorship was required of Messrs. Grunberger and Heller; Mr. Grunberger did not investigate inventorship, or which inventor contributed to any claim, or whether any inventor collaborated with any other inventor sufficiently to be named as a joint inventor or not; Messrs. Grunberger and Heller did not communicate with any named inventor except Mr. Vorbach regarding inventorship of the asserted patents; Mr. Grunberger never explained the duty of candor or inventorship to Mr. Vorbach; and the only evidence offered by

---

[14] PACT cites one case, without analysis, to support its position, *Everlight Elecs. Co. v. Nichia Corp.*, 143 F. Supp. 3d 644, 657–60 (E.D. Mich. Oct. 20, 2015). Mot. at 28. But *Everlight* did not assess summary judgment; it was an Opinion following a bench trial on inequitable conduct where the Court assessed credibility of multiple witnesses (*id.* at 652–653) and weighed evidence that is different in kind and volume to the evidence Intel cites in this Opposition. *Id.* at 658–68.

Mr. Vorbach and Mr. Grunberger as to correct inventorship and truth of the inventor oaths is that

there was (according to them) ████████████████████████, which is the incorrect

legal standard for inventorship.  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–

28 (Fed. Cir. 1994).  RSUF 196–199, 202, 222–227, 302.  Taken together, these facts support the

inference that Messrs. Grunberger and Heller submitted Mr. Vorbach's declarations knowing them

to be untrue, because they knew Mr. Vorbach had no basis to sign those oaths in the first place.

PACT also incorrectly argues that this basis of inequitable conduct should be struck as a

contention not previously disclosed during fact discovery.  But PACT did not serve any contention

interrogatory on inequitable conduct, in contrast to PACT's single cited case where plaintiffs

identified contentions that were not included in ***interrogatory responses***.  *Bringham & Women's*

*Hosp. Inc. v. Teva Pharms. USA, Inc.*, 2010 WL 3907490, at * 2 (D. Del. Sept. 21, 2010).

**C.**   **Fact Issues Preclude Summary Judgment Regarding ████████**
████████ **Regarding Lack Of Inventorship And Lack Of Support For The**
**Asserted Claims.**

PACT's final basis for summary judgment should also be denied because, again, it merely

raises factual disputes.  Motion at 29–30.[15]  Intel's evidence shows that Mr. Vorbach failed to

submit to the USPTO ████████████████████████████████████████

████████████████████—that were material to patentability because ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ PACT

SoF ¶ 112.  Despite PACT's arguments to the contrary, this type of information is encompassed

by the duty of candor, which requires submitting to the USPTO "all information known to [Mr.

---

[15]  PACT again argues that Intel did not "preserve" this basis of inequitable conduct for allegedly
not disclosing in Intel's discovery responses, but again, PACT served no inequitable conduct
interrogatory, and this argument should be rejected for the same reasons as above.  *See* § VI.C.

Vorbach] to be material to patentability as defined in [37 C.F.R. 1.56]."  37 C.F.R. 1.56(a).  The

term "information" in 37 C.F.R. 1.56 is expansive, capturing ████████████████████████████████

> The term 'information' as used in 37 CFR 1.56 means all of the kinds of information required to be disclosed and includes any information which is 'material to patentability.' Materiality is defined in 37 CFR 1.56(b) and discussed herein at MPEP § 2001.05. In addition to prior art such as patents and publications, 37 CFR 1.56 **includes, for example, information on** enablement, possible prior public uses, sales, offers to sell, **derived knowledge, prior invention by another, inventorship conflicts,** litigation statements, and the like. 'Materiality is not limited to prior art but **embraces any information that a reasonable examiner would be substantially likely to consider important** in deciding whether to allow an application to issue as a patent.'

MPEP § 2001.04 (emphasis added), citing *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,

326 F.3d 1226, 1234, 66 USPQ2d 1481, 1486 (Fed. Cir. 2003).  Thus, despite PACT's argument

to the contrary,  Mr. Vorbach had a duty to submit ████████████ to the patent office, and his failure

to  do  so  is  fully  consistent  with  his  intentionally  deceptive  conduct  concerning  the  TMS

References and submission of false declarations.

PACT seeks to excuse Mr. Vorbach's failure to submit these emails to the USPTO by citing

to ████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████ Motion

at 29–30. █████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████ Ex. 46 (Gleichman dep. at 221:4–11).

## VI.    CONCLUSION

On the issues that Intel contests, PACT's Motion fails as a matter of law, or raises genuine

issues of material fact precluding summary judgment, and should be denied on those bases.

DATED:  July 18, 2022

OF COUNSEL:

Gregory S. Arovas P. C.
Todd M. Friedman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Christopher Lawless
Sharre Lotfollahi
Kevin Bendix
Mark D. Fahey
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
(213) 680-8400

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90071
(310) 552-4200

Brandon H. Brown
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA  94104
(415) 439-1400

MORRIS NICHOLS ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Intel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 18, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                        *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Frederick A. Lorig, Esquire                                     *VIA ELECTRONIC MAIL*
Danielle L. Gilmore, Esquire
Nima Hefazi, Esquire
Marshall M. Searcy III, Esquire
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
*Attorneys for Plaintiff*

Mark Tung, Esquire                                              *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
*Attorneys for Plaintiff*

Ziyong Li, Esquire                                              *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Ron Hagiz, Esquire                                    *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*

Jared Kneitel, Esquire                                *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Plaintiff*

/s/ Brian P. Egan
_____
Brian P. Egan (#6227)